Stanley PROU, Petitioner, Appellant,

v.

UNITED STATES of America, Respondent, Appellee.

No. 98–1854.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1999.

Decided Dec. 17, 1999.

Elizabeth L. Prevett, Federal Defender Office, with whom Owen S. Walker, Federal Public Defender, and Stanley Prou, pro se ipso, were on brief, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, were on brief, for appellee.

Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Boudin, Circuit Judge.

SELYA, Circuit Judge.

The mandatory minimum sentence for distribution of a controlled substance ordinarily doubles if the accused has a prior felony drug conviction. *See* 21 U.S.C. § 841. But this enhancement accrues only if the government elects to pursue it. In that event, the government must file, within a specified time frame, an information signaling its intention and identifying the previous conviction(s) on which it relies. *See id.* § 851(a)(1).

In this appeal, petitioner-appellant Stanley Prou challenges an enhanced sentence imposed on the basis of a concededly un-

timely filing. He shrugs off the fact that the issue was not raised on direct appeal, claiming that the usual rules of procedural default do not apply. Although this claim derives support from decisions of two sister circuits, we reject it. As a fallback, Prou asserts that he has shown cause and prejudice sufficient to excuse his procedural default. We agree with this assertion. Consequently, we reverse the order dismissing Prou's section 2255 petition, vacate the enhanced sentence, and remand for resentencing.

## I

The relevant facts are essentially undisputed. On April 6, 1995, a federal grand jury indicted the petitioner for conspiring to distribute (or to possess with intent to distribute) cocaine, aiding and abetting such conduct, and carrying a firearm in relation to a drug-trafficking crime. *See* 21 U.S.C. §§ 841, 846; 18 U.S.C. §§ 2, 924(c). On June 13, the United States Attorney filed a so-called "Rule 404(b) notice" disclosing the government's intention to introduce evidence of the petitioner's 1993 state court conviction for possession of marijuana with intent to distribute.[1] A jury was empaneled (but not sworn) on June 22. Nineteen days later, the government filed the crucial section 851(a)(1) information, again referencing the 1993 conviction. The court (Pettine, J.) administered the jury oath on August 21. Trial proceeded and the jurors found the petitioner guilty on all counts.

The petitioner's court-appointed attorney raised several objections to the presentence investigation report, including a claim that the petitioner's 1993 state conviction was insufficient to trigger the statutory enhancement because it was for a misdemeanor, not a felony. Counsel did not succeed in scuttling the enhancement,

but he did convince Judge Pettine to pare the drug quantity and eliminate the double-counting of a probation violation. These successes had the effect of shrinking the guideline sentencing range for the drug-trafficking counts from 168–210 months to 78–97 months. Basing the sentence on one kilogram of cocaine instead of five also reduced the mandatory minimum sentence from ten years to five. *Compare* 21 U.S.C. § 841(b)(1)(A) *with id.* § 841(b)(1)(B). Nevertheless, defense counsel did not question the timeliness of the section 851(a)(1) information, and the ensuing enhancement boosted the petitioner's sentence to ten years. In addition, Judge Pettine imposed a five-year consecutive sentence on the firearms count.

The petitioner unsuccessfully pursued a direct appeal, *see* 101 F.3d 106 (1st Cir. 1996) (table), *cert. denied,* 520 U.S. 1129, 117 S.Ct. 1275, 137 L.Ed.2d 352 (1997), but his court-appointed appellate counsel never questioned the timeliness of the section 851(a)(1) information. Prou then filed a pro se motion under 28 U.S.C. § 2255. In an accompanying memorandum, he asseverated, as part of an ineffective assistance of counsel claim, that his attorneys had "failed to object to untimely filing of enhancement 21 U.S.C. § 841(b) 21 U.S.C. § 851 by the government." The United States ignored this allegation in its response. The petitioner, however, reiterated the point in his rejoinder, repeating the quoted language and elaborating upon it:

> The government filed 21 U.S.C. § 851 late, that section requires filing before jury selection begins. Which would allow the petitioner ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequence of a potential guilty verdict. See ... *Arnold v. United States,* 443 A.2d 1318, 1326 (D.C.1982); (information not timely

---

1. The sobriquet derives from an evidence rule, under which evidence of other crimes is barred for the purpose of proving the character of a person or action in conformity therewith, but is admissible for certain other purposes. *See* Fed.R.Evid. 404(b). If, however, the accused seasonably requests disclosure, the government's use of such evidence in a criminal case is conditioned upon the giving of reasonable advance notice. *See id.*

filed after jury selection process had begun.) . . . .

He then attempted to demonstrate "cause" and "prejudice."

Judge Pettine had retired, and the section 2255 motion came before Chief Judge Lagueux, who denied it summarily (without a hearing and without specifically addressing the petitioner's section 851(a)(1) claim). Judge Lagueux thereafter refused to issue a certificate of appealability (COA). *See* 28 U.S.C. § 2253. On subsequent application, we granted a COA limited to the following question: "Whether the district court was without jurisdiction to impose an enhanced sentence when the information required by 21 U.S.C. § 851 to be filed 'before trial' was filed after the jury was impaneled?" We simultaneously appointed counsel for the petitioner and indicated specific areas to be addressed in subsequent briefing.

## II

■■■ We quickly parry a preliminary thrust. The government declares that the petitioner failed adequately to raise the timeliness of the section 851(a)(1) information in his pro se motion for relief under section 2255. We think not.

In his motion, the petitioner specifically mentioned ineffective assistance of counsel resulting from an asserted failure to object to the untimeliness of the informational filing. While the petitioner made this allegation pithily, its gist was clear and distinct. The petitioner then reiterated the point in his reply memorandum, citing relevant authority. We conclude that further elaboration was unnecessary. The petitioner's submissions sufficiently charged the court and the government with notice of the claim, especially since the described error virtually jumps off the face of the docket. It would be unreasonable to require more from a pro se prisoner. *See*

*Lema v. United States,* 987 F.2d 48, 54 n. 5 (1st Cir.1993); *cf. Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (holding pro se complaints to less stringent standards than pleadings drafted by counsel).

## III

■■■ The petitioner posits that the absence of a timeous section 851(a)(1) information deprived the sentencing court of jurisdiction to impose the enhanced sentence. Because jurisdictional failings are immune from normal rules of waiver and procedural default,[2] his reasoning goes, the district court had an obligation to consider the claim on collateral review despite his failure to raise it either before sentencing or on direct appeal. The government resists this syllogism. It urges us to draw a distinction between nonwaivable issues of subject-matter jurisdiction and waivable issues of statutory authorization, and to locate section 851(a)(1) in the latter category—a placement which, under *United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), would require a showing of "cause" and "actual prejudice" to keep the issue in play. In sifting through these conflicting approaches, our review is plenary. *See United States v. McGill,* 11 F.3d 223, 226 n. 2 (1st Cir.1993); *see also Scarpa v. DuBois,* 38 F.3d 1, 9 (1st Cir.1994) (applying de novo review to legal determinations in habeas proceeding).

### A

We do not write on an empty slate. In *Hardy v. United States,* 691 F.2d 39 (1st Cir.1982), a panel of this court, speaking through then-Judge Breyer, explained that a district court lacks authority to impose the statutory enhancement unless the government has complied with section

---

**2.** Technically, this case involves a procedural default, in which a failure seasonably to raise a claim bars subsequent attempts to do so. Waiver, in contrast, represents an express decision by a party not to pursue a claim. Because all waivable claims are by definition subject to procedural default, we use the terms interchangeably.

851(a)(1)'s temporal strictures. *See id.* at 41. Judge Breyer expressed doubt as to whether a section 2255 petitioner raising the issue for the first time on collateral review had to show cause and prejudice under *Frady*, but found it unnecessary to answer the question because Hardy cleared both hurdles. *See Hardy*, 691 F.2d at 41–42. We apparently resolved this doubt a decade later in *Suveges v. United States*, 7 F.3d 6, 10 (1st Cir.1993), in which we ruled that failure to raise a section 851(a)(1) objection on direct appeal constituted a procedural default, thus requiring a section 2255 petitioner to satisfy *Frady*. There is no indication, however, that Suveges sought to exempt himself from the cause-and-prejudice paradigm. In all events, our ambivalence on this issue soon resurfaced. *See United States v. Romero–Carrion*, 54 F.3d 15, 17–18 (1st Cir.1995) (dictum) (stating that "failure to file the information required by section 851(a) deprives the district court of jurisdiction to impose an enhanced sentence" and suggesting that "harmless error" analysis is inapposite).

 The government contends that *Suveges* represents binding circuit precedent and thus forecloses us from reaching the section 851(a)(1) issue in the absence of cause and prejudice. But *Suveges* at one point described section 851(a)(1)'s strictures as "jurisdictional," 7 F.3d at 10, and two courts of appeals since have held that section 851(a)(1) claims are not subject to the usual rules of procedural default, *see Harris v. United States*, 149 F.3d 1304, 1306–09 (11th Cir.1998); *Kelly v. United States*, 29 F.3d 1107, 1112–14 (7th Cir. 1994). Given this scumbled tableau, we think it appropriate to revisit the question in some depth. *Cf. Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 592 (1st Cir.1995) (explaining that the "law of the circuit" rule may give way in "those relatively rare instances in which authority that postdates the original [panel] decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind").

## B

Prior to 1970, a federal statute required the United States Attorney, in a drug case, to advise the court after conviction but before sentencing whether the defendant was a recidivist and therefore subject to a mandatory enhanced sentence. *See* 26 U.S.C. § 7237(c)(2) (1964). Under this provision, we upheld an enhanced sentence when the government filed the information after sentencing but the defendant nonetheless admitted the existence of the prior conviction. *See King v. United States*, 346 F.2d 123, 124 (1st Cir.1965); *see also United States v. Noland*, 495 F.2d 529, 531 (5th Cir.1974) (collecting cases to support the proposition that substantial compliance sufficed).

 The Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act), 21 U.S.C. §§ 801–971, repealed this system, substituting the present protocol:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts.

21 U.S.C. § 851(a)(1).

The proscriptive language of the section ("No person ... shall be sentenced to increased punishment ... unless ...") and the specific provision for postponement

leave no doubt that the procedural requirements of section 851(a)(1) are to be strictly enforced.[3] *See United States v. Belanger,* 970 F.2d 416, 418 (7th Cir.1992); *United States v. Williams,* 899 F.2d 1526, 1529 (6th Cir.1990); *Noland,* 495 F.2d at 533. For present purposes, two elements of the new scheme deserve special emphasis. First, the law gives the prosecutor discretion to forgo a sentence enhancement altogether. Second, the prescribed information must be filed *before* trial or entry of a guilty plea. The first change reflects a preference for a more flexible penalty structure. *See* H.R.Rep. No. 91–1444, at 10–11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4575–76; *see also Noland,* 495 F.2d at 532–33. The second change—requiring notice before trial—"allows the defendant ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Johnson,* 944 F.2d 396, 407 (8th Cir.1991).

Sometimes courts have described the new scheme's procedural requirements as "jurisdictional." *See, e.g., Romero–Carrion,* 54 F.3d at 17–18; *Belanger,* 970 F.2d at 418; *United States v. Wright,* 932 F.2d 868, 882 (10th Cir.1991); *United States v. Olson,* 716 F.2d 850, 853 (11th Cir.1983); *United States v. Allen,* 566 F.2d 1193, 1196 (3d Cir.1977); *United States v. Cevallos,* 538 F.2d 1122, 1125 (5th Cir.1976). On other occasions, courts have been more circumspect. *See, e.g., United States v. Levay,* 76 F.3d 671, 674 & n. 4 (5th Cir. 1996) (holding that failure by the prosecutor to file a section 851(a)(1) information on time "prevents," "preclude[s]," and "bar[s]" a sentence enhancement); *United States v. Smith,* 984 F.2d 1084, 1087 (10th Cir.1993) (holding that noncompliance with section 851(a)(1) deprives the trial court of "authority" to impose an enhanced sentence); *Noland,* 495 F.2d at 533 (same). The D.C. Circuit succinctly stated the case for caution:

> "Jurisdiction" is a word of many, too many, meanings. We prefer to put the matter in different terms. A prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions.

*United States v. Vanness,* 85 F.3d 661, 663 n. 2 (D.C.Cir.1996).

Without exception, the cases discussed above that have called the procedural requirements of section 851(a)(1) "jurisdictional" arose on direct appeal and nothing turned on the choice of phrase. The stakes are quite different when the issue of timeliness surfaces for the first time in a collateral proceeding. Thus, the classification of section 851(a)(1)'s timeliness requirement as jurisdictional proved all-important in *Harris* and *Kelly;* in each of those cases, the court permitted a habeas petitioner to advance a newly-emergent section 851(a)(1) claim on collateral review without any showing of cause or prejudice, espousing the theory that jurisdictional issues cannot be waived or forfeited.[4] *See Harris,* 149 F.3d at 1306–09; *Kelly,* 29 F.3d at 1112–14.

---

3. Enforcement has been strict, but not rigid. Thus, courts occasionally have excused untimely filings as long as the defendant has been made aware before trial or entry of a guilty plea of both the government's intent to seek an enhancement and the particular prior conviction(s) upon which the government aspires to rely. *See, e.g., United States v. Brown,* 921 F.2d 1304, 1308–09 (D.C.Cir.1990) (upholding section 851(a)(1) information filed on day of trial in light of the government's oral notification two days earlier); *United States v. Weaver,* 905 F.2d 1466, 1481 (11th Cir.1990) (holding that oral notification and timely service sufficed even though information was not filed in court until after trial had begun).

4. Two other cases also point in this direction. In one, the court considered a section 851(a)(1) claim on direct review despite the defendant's failure to raise the issue below. *See United States v. Novey,* 922 F.2d 624, 627 (10th Cir.1991). In the other, the Sixth Circuit suggested, albeit in dictum, that a knowing and intelligent waiver of the section 851(a)(1) filing requirement would be ineffectual. *See Williams,* 899 F.2d at 1529.

■ The petitioner invites us to join these courts. With respect, we decline the invitation. Whether or not the prosecution files a timely section 851(a)(1) information, a federal district court plainly possesses subject-matter jurisdiction over drug cases. *See* 18 U.S.C. § 3231 (conferring original jurisdiction "of all offenses against the laws of the United States"). This jurisdiction necessarily includes the imposition of criminal penalties. Once subject-matter jurisdiction has properly attached, courts may exceed their authority or otherwise err without loss of jurisdiction. *See United States v. Wey*, 895 F.2d 429, 431 (7th Cir.1990) ("Courts may err, even offend the Constitution, without losing subject-matter jurisdiction."); *cf. Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (indicating that only claims that go "to the very power of the State to bring the defendant into court to answer the charge brought against him" implicate subject-matter jurisdiction). Thus, the only question that legitimately arises from the prosecution's late filing of a section 851(a)(1) information concerns the court's authority to impose an enhanced sentence. This is simply not a question of subject-matter jurisdiction. *See Vanness*, 85 F.3d at 663 n. 2.

■ Judge Learned Hand once wrote that words can be "chameleons, which reflect the color of their environment." *Commissioner v. National Carbide Corp.*, 167 F.2d 304, 306 (2d Cir. 1948). The confusion in the case law dealing with section 851(a)(1) probably results from the chameleon-like quality of the term "jurisdiction." As we recently observed, "the word 'jurisdiction' is protean and has a wide variety of meanings, depending on the context in which it is used." *United States v. Swiss Am. Bank*, 191 F.3d 30, 40 (1st Cir.1999). The phenomenon can easily be illustrated; take, for example, subject-matter jurisdiction and personal jurisdiction (both of which are potentially encompassed by a reference to "jurisdiction"). The requirement of subject-matter jurisdiction relates directly to the constitutional power of a federal court to entertain a cause of action. For this reason, the question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue even though the parties have failed to raise it. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *United States v. Horn*, 29 F.3d 754, 767–68 (1st Cir.1994); *Lopez v. Arraras*, 606 F.2d 347, 350 (1st Cir.1979). Personal jurisdiction is a horse of a different hue. That jurisdictional requirement exists to protect parties' constitutional rights and therefore is subject to the normal rules of waiver and procedural default. *See Insurance Corp.*, 456 U.S. at 702–03, 102 S.Ct. 2099; *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir.1991).

■ Another example, of particular pertinence here, arises out of the unfortunate penchant of judges and legislators to use the term "jurisdiction" to describe the technically distinct notion of a court's authority to issue a specific type of remedy in a case in which the threshold requirements of subject-matter and personal jurisdiction are not open to question. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–93, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *International Union of Operating Eng'rs, Local 150 v. Rabine*, 161 F.3d 427, 429–31 (7th Cir.1998); *United States v. Lopez–Pena*, 912 F.2d 1542, 1547 n. 6 (1st Cir.1989), *vacated but later reinstated*, 944 F.2d 51 (1st Cir.1991) (en banc). *Steel Co.* itself is emblematic. There, the Court rejected the view that the reference to "jurisdiction" contained in 42 U.S.C. § 11046(c) implicated subject-matter jurisdiction,[5] concluding instead

---

5. 42 U.S.C. § 11046(c) provides in relevant part:

The district court shall have jurisdiction in actions brought under subsection (a) of this

that it should be read "as merely specifying the remedial *powers* of the court, viz., to enforce the violated requirement and to impose civil penalties." *Id.* at 90, 118 S.Ct. 1003.

We believe that courts historically have used the word "jurisdictional" in much the same way to describe the operation of section 851(a)(1). The imposition of a sentence is the criminal-law analogue to the granting of a remedy in a civil action—and neither implicates subject-matter jurisdiction. Accordingly, we hold that noncompliance with the procedural regime established by section 851(a)(1) deprives the sentencing court of authority to impose an enhanced sentence—no more and no less. Here, then, the lower court was empowered to render a binding judgment concerning a federal crime, and the fact that the judgment actually entered embodied a sentence that surpassed the level authorized by Congress did not divest the court of jurisdiction over the subject matter.

### C

■ Seen in this light, the operative question reduces to whether section 851(a)(1) is nonwaivable notwithstanding its lack of impact on subject-matter jurisdiction. Citing the mandatory language of the statute, the petitioner hypothesizes that an enhancement based on an untimely filing, like a judicial decree rendered in the absence of subject-matter jurisdiction, is null and void. We reject this hypothesis.

That section 851(a)(1) is phrased in obligatory terms cannot be determinative of a waiver inquiry. If it were, a whole range of constitutional and statutory provisions employing compulsory language would give rise to nonwaivable claims. The case law belies so sweeping a generalization. For instance, statutes of limitations often speak in mandatory terms, *see, e.g.,* 18 U.S.C. § 3282 (providing that "no person shall be prosecuted, tried, or pun-

ished" after a specified period of time), yet defenses premised on the government's failure to satisfy statutes of limitations can be waived, *see, e.g., United States v. Spector,* 55 F.3d 22, 24–25 (1st Cir.1995); *Acevedo–Ramos v. United States,* 961 F.2d 305, 307–09 (1st Cir.1992). *Cf. Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 964–65, 143 L.Ed.2d 18 (1999) (requiring section 2255 petitioner to show prejudice when claiming that the district court neglected to comply with former Fed. R.Crim.P. 32(a)(2)'s command that, after imposing sentence, the court "shall advise the defendant of the defendant's right to appeal").

On this point, we regard *United States v. Baucum,* 80 F.3d 539 (D.C.Cir.1996) (per curiam), as instructive. There, the D.C. Circuit refused to entertain an untimely constitutional challenge to a notice served under 21 U.S.C. § 860(a) (which, like section 851(a)(1), triggers increased penalties for certain violations of 21 U.S.C. § 841). *See id.* The court explained that "constitutional defects that do not reflect upon the power of the prosecution to *initiate* proceedings can be waived (and thus do not affect the court's subject-matter jurisdiction)." *Id.* at 544. It follows inexorably that if constitutional shortcomings can be waived, save only those that go to the power to bring the defendant into court, then statutory miscues likewise can be waived, subject only to the same caveat. This principle is dispositive here, for the defect upon which the petitioner relies concerns the penalty, not the government's power to initiate the underlying criminal proceeding.

■ As a last gasp, the petitioner remarks the discretion inherent in section 851(a)(1). Because the statute vests this discretion in the Executive Branch, he asseverates, permitting an enhancement based on an unpunctual filing would offend separation-of-powers tenets. This asseveration lacks force.

section against an owner or operator of a facility to enforce the requirement con-

cerned and to impose any civil penalty provided for violation of that requirement.

Although section 851(a)(1) empowers the Executive Branch either to seek or to abjure an enhanced sentence, the statute's pretrial filing and service requirements serve an entirely different purpose: they afford the accused adequate time to make a fully informed decision whether to plead or stand trial. *See Johnson,* 944 F.2d at 407. Because section 851(a)(1)'s temporal requirements exist for the defendant's benefit, it makes perfect sense to give the defendant the power to waive (and the obligation not to forfeit) strict compliance with them. In this respect, section 851(a)(1) is a fair congener to the panoply of fundamental constitutional guarantees that have been held subject to the usual rules of waiver and procedural default. *See United States v. Mezzanatto,* 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (listing examples); *Peretz v. United States,* 501 U.S. 923, 936–37, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (same). Consequently, we perceive no separation-of-powers problem.

Nor do we discern any inequity in applying the customary rules of waiver and procedural default in section 851(a)(1) cases. In general, waiver and procedural default rules serve the public interest in the finality of criminal judgments. *See Frady,* 456 U.S. at 166, 102 S.Ct. 1584. Moreover, requiring a defendant to raise an issue at trial and/or on direct appeal "channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." *Reed v. Ross,* 468 U.S. 1, 10, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). These general precepts fit this context well. Enforcing the procedural default doctrine encourages defendants to present section 851(a)(1) claims at the earliest opportunity and thereby promotes accuracy and economy in sentencing, as well as repose.

▮ To say more on this point would be supererogatory. Upon reexamination, we reaffirm our holding in *Suveges:* a defendant's failure to object at sentencing and/or on direct appeal to the untimeliness of the government's section 851(a)(1) information constitutes a procedural default, leaving the issue open to collateral attack only if the defendant can show cause and prejudice. *See Suveges,* 7 F.3d at 10. It is to those issues that we now turn.

**IV**

On no occasion prior to filing his section 2255 motion did the petitioner object to his enhanced sentence on the ground that the section 851(a)(1) information was untimely. Thus, he must show both "cause" excusing his procedural default and "actual prejudice" resulting from the unpreserved error in order to obtain collateral relief. *Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584. The petitioner succeeds on both fronts.

**A**

▮ Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Demonstrating such ineffectiveness requires a showing "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although a reviewing court must consider the whole of the record, a single, serious error nonetheless can support a claim of ineffective assistance of counsel. *See Carrier,* 477 U.S. at 496, 106 S.Ct. 2639; *Kimmelman v. Morrison,* 477 U.S. 365, 383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *United States v. Cronic,* 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

▮ In this case, the relevant error is the failure to object to an impuissant filing, resulting in the imposition of a sentence not authorized by law. We start with the usual presumption that counsel was competent. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. To rebut the pre-

sumption, the petitioner must show that his attorney's representation was objectively unreasonable under prevailing professional norms and cannot be reconciled with sound strategy. *See id.* at 688–91, 104 S.Ct. 2052. We believe that the petitioner has made the requisite showing.

Section 851(a)(1) straightforwardly declares that no drug offender shall be exposed to an automatic increase in punishment by reason of a prior conviction unless the government, before trial, files an information with the court identifying the conviction(s) upon which it relies. At the time the petitioner's case went forward, it was well-settled (as the government concedes) that "trial," as that term is used in section 851(a)(1), includes jury selection. *See United States v. Rice,* 43 F.3d 601, 604 (11th Cir.1995); *Kelly,* 29 F.3d at 1110; *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1484 (10th Cir.1994); *United States v. White,* 980 F.2d 836, 840–42 (2d Cir. 1992); *Johnson,* 944 F.2d at 406–07; *United States v. Jordan,* 810 F.2d 262, 268–69 (D.C.Cir.1987);[6] *see also United States v. Cartagena–Carrasquillo,* 70 F.3d 706, 715 (1st Cir.1995) (holding to like effect shortly after Prou was sentenced). From the face of the docket, it is evident that the government filed the section 851(a)(1) information nineteen days after Judge Pettine empaneled the jury. Thus, the government's blunder was manifest.

In the ordinary course, the petitioner's attorney should have called attention to this bevue at or before the disposition hearing. At that point, there was absolutely no downside to taking the government to task for its timing error: jeopardy had attached, the petitioner had been convicted, the guideline sentencing range had been computed and its high point was well below ten years, and a timely information was a sine qua non to the applicability of a ten-year mandatory minimum sentence. In short, the petitioner had much to gain,

and nothing to lose, by raising the section 851(a)(1) defect before sentencing (or on direct appeal, for that matter). There was simply no plausible reason not to do so.

■ We readily concede that not every lawyerly slip constitutes ineffective assistance of counsel for Sixth Amendment purposes. *See Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. After all, the Constitution entitles a defendant to generally proficient representation, not perfect representation. *See Scarpa,* 38 F.3d at 8. Withal, courts have not hesitated in finding ineffective assistance of counsel based upon isolated— but important—errors. *See, e.g., Mason v. Hanks,* 97 F.3d 887, 891–902 (7th Cir. 1996); *United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995); *Jackson v. Herring,* 42 F.3d 1350, 1358–62 (11th Cir.1995); *Mayo v. Henderson,* 13 F.3d 528, 533–36 (2d Cir.1994); *Gray v. Lynn,* 6 F.3d 265, 268–71 (5th Cir.1993); *Dawan v. Lockhart,* 980 F.2d 470, 473–75 (8th Cir.1992); *see also* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Procedure and Practice* § 26.3b, at 1102 n. 37 (3d ed.1998) (collecting cases).

In this instance, counsel's failure to call the court's attention to the late filing was no mere garden-variety blunder. Where, as here, an attorney fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands. *See Cook,* 45 F.3d at 395; *United States v. De la Fuente,* 8 F.3d 1333, 1337 (9th Cir.1993). In other words, because the section 851(a)(1) claim was a clear winner and presenting it would have risked nothing, counsel's eschewal of it amounted to constitutionally deficient performance.

### B

■ We turn next to the matter of prejudice, which in this context means "a

---

**6.** Two of these cases involved situations where, as here, the government attempted to file the section 851(a)(1) information after the court had empaneled the jury but before it administered the oath. *See White,* 980 F.2d at 839; *Johnson,* 944 F.2d at 406.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. For this purpose, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.,* but "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," *id.* at 693, 104 S.Ct. 2052. Until very recently, courts and commentators expressed some uncertainty as to whether "prejudice" within the contemplation of *Frady* differed somehow from "prejudice" within the contemplation of *Strickland. See, e.g., Freeman v. Lane,* 962 F.2d 1252, 1259 n. 5 (7th Cir.1992); 2 Liebman & Hertz, *supra,* § 26.3c, at 1108–12; John C. Jeffries, Jr. & William J. Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus,* 57 U. Chi. L.Rev. 679, 684 & n. 25 (1990).

■ Earlier this year, the Court stated that in order to show prejudice sufficient to overcome a procedural default, a habeas petitioner "must convince us that there is a reasonable probability that the result of the trial would have been different" absent the error. *Strickler v. Greene,* — U.S. —, —, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999) (citation and internal quotation marks omitted). "'The question is not whether the defendant would more likely than not have received a different verdict with the [wrongfully withheld] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id.* (quoting *Kyles v. Whitley,*

514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). This language mimics the *Strickland* formulation quoted above. Given the striking linguistic parallel, we conclude that the *Frady* and *Strickland* prejudice standards are one and the same. This accords with both the pre-*Strickler* practice of most courts of appeals, *see* 28 James Wm. Moore et al., *Moore's Federal Practice* § 671.11[2][b], at 671–184 to –185 & n. 48 (3d ed.1999) (collecting cases), and the pre-*Strickler* view of many commentators, *see, e.g.,* Erwin Chemerinsky, *Federal Jurisdiction* § 15.5.2, at 830 (2d ed.1994); Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 28.4(f), at 1218 (2d ed.1992); 28 Moore et al., *supra,* § 671.11[2][b], at 671–184 to –185.

■ Having constructed the template, the prejudice inquiry need not detain us here. Had the petitioner's court-appointed attorney called attention to the obvious defect in the government's section 851(a)(1) information, the district court would not have had recourse to a ten-year mandatory minimum sentence. The subsequent imposition of such a sentence is prejudice, pure and simple.[7] *See Kelly,* 29 F.3d at 1112 (dictum); *Suveges,* 7 F.3d at 10 (dictum); *Hardy,* 691 F.2d at 41.

## V

In this case, the government's section 851(a)(1) filing was late and, prior to jury selection, it furnished neither the petitioner nor the court an equivalent signal of its intent to seek a statutory sentence en-

7. The government mistakenly asserts that the Court's opinion in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), demands a contrary result. That case concerned an attorney's failure to raise an objection supported by precedent subsequently overruled. *See id.* at 366–68, 113 S.Ct. 838. The Court held that the omission, even though likely outcome-determinative at the time, was not prejudicial within the purview of *Strickland* because it did not affect the reliability or fundamental fairness of the result. *See id.* at 372, 113 S.Ct. 838. This ruling flowed directly from the admonition that "'[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" *Id.* at 374, 113 S.Ct. 838 (O'Connor, J., concurring) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052). Subject to this proviso, the traditional *Strickland* "prejudice" standard remains unchanged. *See id.* at 373–75, 113 S.Ct. 838. Just as the Court refused to grant Fretwell a "windfall" produced by a lawless decisionmaker, 506 U.S. at 370, 113 S.Ct. 838, we decline to grant the government the windfall of an unlawful sentence enhancement.

hancement.[8] The failure to raise this point constituted substandard performance on counsel's part, resulting in an incarcerative sentence that not only exceeded the court's authority but also surpassed the apex of the applicable guideline sentencing range by almost two years.

We need go no further. In light of the foregoing, we reverse the order of dismissal, vacate the sentence previously imposed on the drug-trafficking counts (counts I and II), and remand for resentencing without the statutory enhancement. The petitioner has not contested the five-year consecutive sentence imposed on the firearms count (count III), and that portion of his sentence is not affected by this decision.

*Reversed and remanded.*

8. This distinguishes the case at hand from *Belanger*, 970 F.2d at 419, where the Seventh Circuit ruled that two pretrial notices, taken together, satisfied the procedural requirements of section 851(a).