# United States Court of Appeals
## For the First Circuit

No. 09-1012

SEAN JANOSKY,

Petitioner, Appellant,

v.

PETER ST. AMAND,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

Francis J. Hurley, with whom Gannon & Hurley, P.C. was on brief, for appellant.
Anne M. Thomas, Assistant Attorney General, Commonwealth of Massachusetts, with whom Martha Coakley, Attorney General, was on brief, for appellee.

February 3, 2010

**SELYA**, **Circuit Judge**.  This case arises out of an armed robbery gone awry.  In his appeal, petitioner-appellant Sean Janosky, a state prisoner, challenges the dismissal of his federal habeas petition, which asserted violations of his constitutional rights under the Sixth and Fourteenth Amendments.  After careful consideration, we affirm the denial of habeas relief.

## I.  BACKGROUND

On December 18, 1999, two men robbed a diamond merchant at his place of business in Peabody, Massachusetts.  The police investigation led to John Pedoto, Jr., whom the police suspected might have driven the getaway car.  During questioning, Pedoto named the petitioner as the lead robber — the man who had posed as a prospective customer and then robbed the merchant at gunpoint.

The police found a piece of scrap paper in a search of Pedoto's car.  The paper bore the name "Shawn" and a seven-digit telephone number.  Within the Boston area code, that number was listed to one Ann Janosky, at the petitioner's residence.

The police presented a black-and-white photo array to the diamond merchant and his wife (the merchant had seen the thief both during the robbery and while browsing in the store five days earlier; his wife had seen the thief on the prior occasion).  The merchant identified the petitioner as the armed robber.  His wife could not identify anyone from this first array but identified the petitioner when shown an in-color photo array one month later.  The

police obtained a search warrant for the petitioner's residence and seized a brown ribbed turtleneck sweater, similar to one described by the merchant as having been worn by the armed robber.

A state grand jury returned an indictment against the petitioner and a codefendant, Mark Bova, whom the authorities had come to believe was the second man involved in the heist. In advance of trial, the petitioner's counsel moved to allow questioning of police witnesses concerning the statements made by Pedoto (who had since died). Counsel explained that the purpose of this testimony was to show that once Pedoto falsely implicated the petitioner in the robbery in order to shift the spotlight, the police made a prescindent rush to judgment and failed to conduct a full investigation into other potential suspects. Relatedly, counsel asked for a limiting instruction to the effect that Pedoto's statements should not be considered for the truth of the matters asserted. The trial justice deemed these requests premature, although he indicated that, if the evidence came in, he would be inclined to give such an instruction.

The two defendants were tried together. At trial, the prosecution entered into evidence a copy of the scrap of paper seized from Pedoto's car. The petitioner's counsel objected to the introduction of that evidence on hearsay and best evidence grounds, but to no avail.

Also during the trial, the petitioner's counsel elicited testimony from the investigating officers that Pedoto was the one who first linked the petitioner with the robbery. Despite the trial justice's earlier intimation, the petitioner's lawyer did not request an instruction forbidding the use of this testimony as proof of the matters asserted. No such instruction was given but, at the codefendant's request, the trial justice instructed that Pedoto's statements were offered solely against the petitioner and could not be used against Bova.

On March 28, 2002, the jury convicted the petitioner of armed robbery and carrying a firearm without a license. See Mass. Gen. Laws ch. 265, § 17; id. ch. 269, § 10(a). At the same time, it acquitted him of a charge of armed assault with intent to murder. The jury acquitted Bova on the solitary charge against him (armed robbery).

The petitioner appealed and, while his appeal was pending, filed a motion for a new trial.[1] The trial justice denied this motion, and the petitioner appealed from that order. The Massachusetts Appeals Court (MAC) consolidated the two direct appeals and rejected both of them. Commonwealth v. Janofsky [sic], 862 N.E.2d 470 (Mass. App. Ct. 2007) (table).

---

[1] At that point, and throughout the ensuing state and federal proceedings (up to and including the instant appeal), the petitioner's trial counsel no longer represented him.

The petitioner then filed an application for leave to obtain further appellate review (ALOFAR). The Supreme Judicial Court (SJC) summarily denied the ALOFAR. Commonwealth v. Janosky, 865 N.E.2d 1141 (Mass. 2007) (table).

The petitioner repaired to the federal district court and timely sought habeas relief. 28 U.S.C. § 2254. Pertinently, he claimed that: (i) the trial justice's failure to give a suitable limiting instruction violated his constitutional rights to confrontation and due process; (ii) his trial counsel's shoddy performance violated his constitutional right to receive effective assistance of counsel; and (iii) the trial justice's admission of a copy of the scrap of paper seized from Pedoto's car violated his Sixth Amendment right to confrontation. The district court dismissed the petition. Janosky v. St. Amand, No. 08-10713 (D. Mass. Nov. 17, 2008) (unpublished order). The court held that the petitioner's first claim was procedurally barred; that the state courts' rejection of the second claim did not represent an unreasonable application of clearly established federal law; and that the third claim had not been fully exhausted and, thus, was not cognizable on federal habeas review. This timely appeal ensued.

## II.  ANALYSIS

We divide our analysis into three segments, each corresponding to a discrete claim of error. Although the three

-5-

claims implicate distinct bodies of federal habeas law, all of the district court's disputed legal determinations engender de novo review. Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999).

## A. **Jury Instructions**.

We begin with the petitioner's claim that the trial justice abridged his rights by failing to give a sua sponte limiting instruction concerning Pedoto's hearsay statements, and made a bad situation worse by advising the jury (at the codefendant's timely request) that those statements were admitted only against the petitioner. The MAC did not deal with the merits of this claim because the petitioner had not seasonably objected at trial, rendering his claim procedurally barred. That a procedural default took place cannot be gainsaid, and the district court discerned no basis for excusing this procedural default. Accordingly, it ruled that this claim was not subject to federal habeas review. We examine that ruling.

Federal habeas review of a particular claim is precluded in circumstances in which a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Setting to one side cases of actual innocence, this general prohibition applies unless the habeas petitioner can demonstrate cause for the default and actual prejudice. Id.

We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts. See Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002); Brewer v. Marshall, 119 F.3d 993, 1001 (1st Cir. 1997); Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); cf. Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988) (requiring that a state procedural rule be consistently applied in order to constitute an independent and adequate state ground). Here, the MAC applied the state's contemporaneous objection rule to bar review of this claim after engaging in a brief "miscarriage of justice" assessment to determine whether it should look past the procedural default.

This discretionary miscarriage-of-justice review does not amount to a waiver of the state's contemporaneous objection rule. See Gunter, 291 F.3d at 80; Burks, 55 F.3d at 716 n.2; Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); cf. Beard v. Kindler, 130 S. Ct. 612, 618 (2009) (holding that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review"). Consequently, federal habeas review of the petitioner's jury instruction claim is foreclosed unless — with one exception noted below — he can demonstrate cause and prejudice. See Burks, 55 F.3d at 716.

The petitioner contends that there is cause for his procedural default because his trial counsel performed ineffectively by failing to request a limiting instruction and not objecting to the instruction actually given. The premise on which this contention rests is sound: ineffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute sufficient cause to excuse a procedural default as long as the petitioner exhausted his ineffective assistance claim in state court. Murray v. Carrier, 477 U.S. 478, 488-89 (1986). On this point, exhaustion is not a problem; the petitioner assiduously pursued a constitutionally focused ineffective assistance claim before all the affected state courts, thus satisfying the exhaustion requirement, and the state courts rejected the claim on the merits. Consequently, the question reduces to whether trial counsel's performance was constitutionally infirm.

That question calls into play the familiar test elucidated in Strickland v. Washington, 466 U.S. 668 (1984). This circuit has not yet ruled on whether the Strickland inquiry, when nested within the cause-and-prejudice analysis, is limited by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1). There is disagreement among courts about whether, when the state court has decided a direct ineffective assistance claim, that decision is entitled to AEDPA deference in the cause-

and-prejudice context or whether the ineffective assistance claim is reviewed de novo as to cause and prejudice. Compare, e.g., Wrinkles v. Buss, 537 F.3d 804, 813 (7th Cir. 2008) (applying the AEDPA standard when analyzing an ineffective assistance claim to establish cause), and Winston v. Kelly, 624 F. Supp. 2d 478, 497 n.6 (W.D. Va. 2008) (noting split of authority and concluding the AEDPA standard applies), with Hall v. Vasbinder, 563 F.3d 222, 236-37 (6th Cir. 2009) (holding that even though a habeas petitioner normally must satisfy the heightened AEDPA standard with respect to an ineffective assistance claim, he need not do so when arguing ineffective assistance in order to establish cause), and Fischetti v. Johnson, 384 F.3d 140, 154-55 (3d Cir. 2004) (similar). Here, however, the petitioner has not asked us to apply de novo review for purposes of the cause analysis.

We are reluctant to address an important issue without adversarial briefing; and, in any event, there is no need to decide the issue here. De novo review is obviously more favorable from the petitioner's standpoint, and we will assume without deciding that de novo review applies. We indulge this assumption because, even under that more favorable standard, the petitioner fails to demonstrate ineffective assistance of counsel as cause for his procedural default.

Strickland constructs a two-part algorithm for assessing claims of ineffectiveness. Under this algorithm, a defendant must

show both that counsel's performance was deficient and that it prejudiced his defense. 466 U.S. at 687. An inquiring court need not necessarily address both parts of this algorithm; if the court determines that the defendant does not satisfy either part, it may stop there. Id. at 697.

To establish deficient performance, a defendant must show that, considering all the circumstances, "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This prejudice analysis is the same as the prejudice analysis more generally used in connection with procedural defaults. See Prou, 199 F.3d at 49.

In this instance, we need not decide whether trial counsel's handling of the jury instructions descended to the level of ineptitude necessary to constitute deficient performance. Given the substantial evidence of the petitioner's guilt, there is no reasonable probability that, had the matter been handled as the petitioner now suggests, the outcome of his trial would have changed. We explain briefly.

It is, of course, settled law that a court must weigh the strength of the evidence in determining whether a sufficient showing of prejudice has been made under Strickland. See United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008); Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). When the evidence of guilt is substantial, courts routinely have found no prejudice resulting from counsel's failure to request a limiting instruction. See, e.g., Musladin v. Lamarque, 555 F.3d 830, 849 (9th Cir. 2009); Albrecht v. Horn, 485 F.3d 103, 129 (3d Cir. 2007); Anderson v. Sternes, 243 F.3d 1049, 1058 (7th Cir. 2001); Garrett v. United States, 78 F.3d 1296, 1303 (8th Cir. 1996); Scarpa v. Dubois, 38 F.3d 1, 16 (1st Cir. 1994).

Here, the evidence of the petitioner's guilt was substantial (indeed, overwhelming). The victim and his wife both identified the petitioner. The victim's eyewitness testimony was especially powerful; he testified that he had engaged in a twenty-minute, face-to-face conversation with the petitioner immediately prior to the robbery. He also had seen him on another occasion, five days earlier. And, finally, the victim's description of the brown sweater worn by the armed robber matched apparel seized by the authorities from the petitioner's home.

In comparison, the inculpatory effect of Pedoto's statements was quite modest.[2]  Moreover, even though counsel did not request a limiting instruction with respect to Pedoto's hearsay statements, he explained the narrow objective of this testimony in both his opening statement and his closing argument. At these times, counsel repeatedly stressed that the purpose of the evidence was to show that Pedoto falsely accused the petitioner in order to avoid prosecution and that the police, content with a bird in hand, thereafter neglected to undertake an adequate investigation.

In light of the foregoing, we do not find any prejudice in trial counsel's failure either to request a limiting instruction or to object to the instruction actually given.  It follows that the petitioner cannot show "cause" through a showing of trial counsel's alleged ineffectiveness.

Of course, even without a finding of cause and prejudice in the conventional sense, a federal habeas court may excuse a procedural default if the petitioner can demonstrate that a failure to consider his claim will work a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  The miscarriage-of-justice exception is narrow and applies only in extraordinary circumstances — circumstances in which a petitioner makes some

---

[2] The scrap of paper, seized from Pedoto's car, was admitted independent of the testimony.

showing of actual innocence.  See Carrier, 477 U.S. at 496; Burks, 55 F.3d at 717-18.  Here, however, the petitioner has not attempted to make any such showing, and none is evident on the face of the record.

That ends this aspect of the matter.  Simply put, the petitioner has not mustered the required showing of cause and prejudice to excuse his procedural default.  See Carrier, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").  The petitioner is thus barred from litigating his procedurally defaulted jury instruction claim.

## B. Ineffective Assistance.

We next address the petitioner's independent claim of ineffective assistance of counsel.  The petitioner asserts that his trial counsel was ineffective in the ways previously mentioned (failing to request a limiting instruction at the appropriate time and not objecting to the instruction actually given) and in two additional ways: eliciting damaging hearsay testimony from the investigating officers and neglecting to investigate other potential culprits.  Because the state courts reached the merits of the petitioner's independent ineffective assistance claim, we apply the AEDPA's deferential standard of review.  See 28 U.S.C.

§ 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 412 (2000). Under this standard, we restrict our inquiry to whether the relevant state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision — in this case, the MAC's rescript. See Foxworth v. St. Amand, 570 F.3d 414, 425-26 (1st Cir. 2009); Gunter, 291 F.3d at 80.

For habeas purposes, a state-court decision is contrary to clearly established federal law if the state court employs a rule that contradicts an existing Supreme Court precedent or if it reaches a different result on facts materially indistinguishable from those of the controlling Supreme Court precedent. Williams, 529 U.S. at 405-06. A state-court decision constitutes an unreasonable application of clearly established federal law if it identifies the correct rule, but applies that rule unreasonably to the facts of the case sub judice. Id. at 407-08. To justify federal intervention, the state court's application must be both incorrect and unreasonable. See Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008) (explaining that "the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error"); McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (same).

The Strickland standard qualifies as clearly established federal law for purposes of habeas review.  See, e.g., Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002); see also Williams, 529 U.S. at 391.  Although the MAC did not cite to Strickland in resolving the petitioner's claim, it used a state-law analogue that we have deemed a satisfactory surrogate for the Strickland standard.  See Ouber, 293 F.3d at 30 n.8 (explaining that the Massachusetts ineffective assistance standard is at least as favorable to defendants as the Strickland standard); accord Gomes v. Brady, 564 F.3d 532, 540 n.5 (1st Cir. 2009); Evans v. Thompson, 518 F.3d 1, 12 n.7 (1st Cir. 2008).  Thus, the MAC's decision cannot be regarded as contrary to clearly established federal law.

The remaining question is whether the MAC's decision denying the petitioner's ineffective assistance claim constituted an unreasonable application of this standard in derogation of the AEDPA.  For the purpose of answering this question, we break the claim into its component parts.

1.  **Jury Instructions**.  We can dispatch with celerity the claim that trial counsel was ineffective in neither requesting a limiting instruction nor objecting to the instruction actually given.  We already have concluded, in determining that there was no cause for the petitioner's procedural default, that counsel was not ineffective in these respects due to the absence of any

-15-

prejudice. See supra Part II(A). For purposes of the cause analysis, we assumed without deciding that de novo review applied. See supra Part II(A). It follows inexorably that the petitioner's independent ineffective assistance claim grounded on the same facts cannot succeed under the less generous AEDPA standard of review. See Hall, 563 F.3d at 239. Consequently, we have no reason to discuss this claim further.

2. **Eliciting Testimony**. The petitioner maintains that his trial counsel was ineffective in eliciting otherwise inadmissible hearsay testimony anent Pedoto's statements to the police. He insists that this strategy was plainly unreasonable because it bolstered the victim's identification of the petitioner and, in the bargain, sacrificed the petitioner's rights under the Confrontation Clause because Pedoto was not available for cross-examination. In an effort to illustrate the prejudicial effect of this tactic, the petitioner notes that the trial justice placed this testimony off limits as to his codefendant, and an acquittal followed.

The MAC ruled that counsel's decision to elicit the Pedoto hearsay testimony was not unreasonable because it could have added weight to counsel's defense strategy, which was to portray Pedoto as attempting to shift the blame and to suggest that the police bit hook, line, and sinker, eschewing the completion of a full investigation. The MAC further reasoned that counsel's

-16-

strategy could have helped to cast doubt upon the victim's strong identification of the petitioner as the armed robber.

We cannot say that the MAC's resolution of this claim was unreasonable. Where strategic choices are involved, reviewing courts must be careful not to lean too heavily on hindsight. See Strickland, 466 U.S. at 689; Ouber, 293 F.3d at 25. Rather, a reviewing court must be somewhat deferential, applying "a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." Strickland, 466 U.S. at 689.

Here, counsel's decision to elicit the Pedoto hearsay testimony was part of a calculated trial strategy aimed at poking holes in the police investigation. That strategy was plausible because, as counsel established, the officers failed to locate any physical evidence (e.g., fingerprints, the gun that the robber used, or the purloined jewelry), failed to preserve photographs from the crime scene, and could not produce the originals of certain items seized from Pedoto's car (e.g., the scrap of paper). The fact that the hearsay testimony was inadmissable under the Confrontation Clause had the petitioner objected at that time does not demand a different result. See United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980) (holding that counsel may waive his client's right of confrontation "so long as the defendant does not dissent . . . and so long as it can be said that the attorney's decision was . . . part of a prudent trial strategy"); see also

-17-

<u>Cruzado</u> v. <u>Puerto Rico</u>, 210 F.2d 789, 791 (1st Cir. 1954) (holding that counsel, in the presence and on behalf of an accused, may waive the accused's right of confrontation).

To be sure, counsel's strategy was not free from risk — but the state's case against the petitioner was formidable, and counsel did not have any really attractive options. When, as in this case, counsel's decision to elicit potentially damaging testimony is part of a plausible trial strategy, that decision does not fall below an objective standard of reasonableness.[3] <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Toms</u>, 396 F.3d 427, 436 (D.C. Cir. 2005); <u>Campbell</u> v. <u>United States</u>, 364 F.3d 727, 734 (6th Cir. 2004). So it is here.

**3.** **<u>Failure to Investigate</u>**. The petitioner posits that his trial counsel was ineffective in failing to conduct an adequate investigation into the availability of exculpatory evidence.

---

[3] The MAC also concluded that the petitioner was not prejudiced by counsel's decision to elicit the hearsay testimony. In so holding, it rejected the petitioner's argument that his codefendant's acquittal added weight to his claim of ineffectiveness. As the MAC recognized, there were several features of the case against the codefendant that distinguished it from the case against the petitioner (e.g., the merchant did not observe Bova as closely, did not converse with him, gave a flawed description of him immediately following the robbery, and his identification of Bova was not corroborated by other evidence). Nevertheless, we need not probe these differences too deeply. After all, the MAC's supportable finding that counsel's performance was not constitutionally deficient avoids any need to reach the issue of prejudice. <u>See</u>, <u>e.g.</u>, <u>Pondexter</u> v. <u>Quarterman</u>, 537 F.3d 511, 521 (5th Cir. 2008) (addressing only one prong of the two-pronged inquiry, and stopping there).

Specifically, he faults counsel for neglecting to interview law enforcement officers about other potential suspects. The MAC determined that counsel's decision to concentrate on exposing flaws in the police investigation, rather than hunting for other suspects, was not objectively unreasonable. In our view, this determination was not an unreasonable application of clearly established federal law.

Under Strickland's performance prong, trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. But this duty does not invariably require a lawyer, at all times and under all circumstances, to probe every evidentiary lead. See Smith v. Workman, 550 F.3d 1258, 1270 (10th Cir. 2008); Williams v. Allen, 542 F.3d 1326, 1337 (11th Cir. 2008). In the last analysis, a decision to eschew investigation "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Here, it was not unreasonable for the MAC to conclude that trial counsel performed acceptably in deciding to focus on the flaws in the police investigation as opposed to pursuing evidence of other possible suspects. The relevant inquiry is not what defense counsel might ideally have mounted but, rather, whether the choice that he made was within the universe of objectively

-19-

reasonable choices.  Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998).

We are dealing here not with an oversight but with a conscious strategic decision.  In the circumstances of this case, reasonably competent counsel could have determined that the best defense was a good offense — a no-holds-barred attack designed to discredit the officers' investigation and undermine the reliability of their informant.

In all events, the decision not to probe for other possible suspects must be assayed in light of the strategy that counsel devised.  See Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993).  Interviewing the officers about other potential suspects could well have backfired.  Depending on the results — a matter of sheer guesswork based on the petitioner's proffer — that tactic might have made the investigation seem more credible.  On this record, not conducting such interviews was within the universe of objectively reasonable strategic choices.  Thus, the decision passes constitutional muster.  See id.

If more were needed — and we doubt that it is — the petitioner's allegation that counsel's failure to investigate prejudiced his defense finds no support in the record.  Where, as here, the result of counsel's alleged failure to investigate is wholly speculative, Strickland's prejudice prong is not satisfied.  See United States v. Porter, 924 F.3d 395, 397 (1st Cir. 1991)

-20-

(rejecting claim that counsel's failure to interview witnesses constituted ineffective assistance absent any showing as to how that failure deprived the defendant of a viable defense); see also Cummings v. Sirmons, 506 F.3d 1211, 1229 (10th Cir. 2007).

### C. **The Scrap of Paper**.

The last item in the petitioner's asseverational array is his claim that the admission into evidence of a copy of the scrap of paper seized from Pedoto's car violated his rights under the Confrontation Clause because he was unable to cross-examine Pedoto (who was deceased at the time of trial) about the paper. The district court did not reach the merits of this claim but, rather, ruled that the petitioner had not exhausted it in state court and, thus, could not raise it in a federal habeas proceeding. We review de novo the district court's determination that the petitioner's claim was unexhausted. Adelson v. Dipaola, 131 F.3d 259, 262 (1st Cir. 1997).

"The exhaustion doctrine honors hallowed principles of federal-state comity. It serves to ensure that the state courts are sufficiently apprised of a federal claim to have a meaningful opportunity to address that claim." Rashad v. Walsh, 300 F.3d 27, 41 (1st Cir. 2002). Consistent with this doctrine, a state prisoner must exhaust available state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971).

-21-

In order to exhaust a federal claim, a petitioner must present that claim "fairly and recognizably" to the state courts. Adelson, 131 F.3d at 262. In other words, he must have tendered the claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Scarpa, 38 F.3d at 6.

In Massachusetts, the SJC is the highest court in the state system. Thus, exhaustion requires presentation of the claim in question to that court. Baldwin v. Reese, 541 U.S. 27, 29 (2004). In most cases — the exceptions are not implicated here — the SJC controls its own docket and may exercise discretion as to whether or not to grant reviews. Even if the SJC declines to grant review, however, the petitioner must have fairly presented the federal claim within the four corners of his ALOFAR. Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007); Adelson, 131 F.3d at 263.

A petitioner will satisfy the fair presentment requirement if he does any of the following in his ALOFAR: (i) cites a provision of the federal Constitution upon which the relevant claim rests; (ii) advances the claim in a manner that alerts the state court to its federal nature; (iii) cites federal constitutional precedents in support of the claim; or (iv) explicitly alleges a violation of a right specifically protected in the federal Constitution. Clements, 485 F.3d at 162. In some

-22-

situations, a petitioner may satisfy the presentment requirement by citing to state-court precedents, which themselves rely on federal constitutional law. Id. Similarly, he may achieve that result by asserting a state claim that is, for all practical purposes, indistinguishable from a federal constitutional claim. Id.

Here, the petitioner raised his Sixth Amendment claim in front of the MAC. But when he thereafter applied for further appellate review, he advanced only state-law claims with respect to the admission of the scrap of paper. Specifically, his ALOFAR argued that the admission of a copy of the scrap of paper transgressed the best evidence and hearsay rules, nothing more. The portion of the ALOFAR that discussed the scrap of paper did not identify the claim as federal in nature, did not rely on any federal case law, and did not argue the point in federal constitutional terms. By the same token, the state-law precedents cited in that portion of the ALOFAR did not themselves rely on federal law. Under these circumstances, our decision in Clements, id. at 163-67, is controlling. Accordingly, we hold that the petitioner did not present his Sixth Amendment claim vis-à-vis the scrap of paper fairly and recognizably to the SJC.

In a vain attempt to parry this thrust, the petitioner invokes our decision in Barresi v. Maloney, 296 F.3d 48 (1st Cir. 2002). There, we authorized a federal habeas court to look not only to the ALOFAR but also to other submissions that were before

-23-

inferior state courts in order to determine if the petitioner had fairly presented a particular federal claim.  Id. at 52-53. Nevertheless, we have limited the application of the Barresi "background" approach to cases in which the ALOFAR is ambiguous as to the nature of the particular claim.  See Clements, 485 F.3d at 163.

The petitioner does not contest the salience of this limitation.  Instead, he argues that his ALOFAR is ambiguous and, on that basis, urges us to look to the brief that he filed before the MAC, which asserted a barebones Sixth Amendment violation with regard to the scrap of paper.  Assuming, without deciding, that Barresi is still good law,[4] that case's "background" approach has no bearing here.  Unlike in Barresi, the petitioner's ALOFAR is nose-on-the-face plain and not at all ambiguous.  The petitioner explicitly raised other federal claims in his ALOFAR.  In view of this dichotomy, we cannot overlook his deliberate omission of any hint of a federal claim in connection with the scrap of paper.  As in Clements, that claim is "unmistakably couched only in state law terms."  Id. at 165.  In fairness to the SJC, we must treat it as such.

---

[4] In Clements, 485 F.3d at 164-65, we left open the question of whether the Supreme Court's decision in Baldwin, 541 U.S. at 31-32, abrogated Barresi's "background" approach.  We take the same prudential stance here.

-24-

The short of it is that the petitioner did not duly present a federal claim in regard to the scrap of paper in his ALOFAR. Consequently, the federal claim that he proffered in the district court was unexhausted, and the district court appropriately dismissed it.

**III.  CONCLUSION**

We need go no further. For the reasons elucidated above, we affirm the dismissal of the petitioner's application for a writ of habeas corpus.

**<u>Affirmed</u>**.