**Jason CLEMENTS, Petitioner,**

v.

**Michael MALONEY, Respondent.**

**No. CIV.A. 03–10377–GAO.**

United States District Court,
D. Massachusetts.

March 10, 2005.

---

Susanne G. Reardon, Attorney General's Office, Boston, MA, for Michael T. Maloney, Respondent.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The respondent has moved to dismiss the petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 for the reason that the petitioner failed to exhaust his available state remedies as to all of the claims in the petition. *See id.*, § 2254(b), (c). The petitioner contends that he has indeed exhausted his state remedies as to all the claims in the petition, but further asks, if it is the judgment of the Court that he has not, that the proceedings on the petition be stayed to afford him the opportunity to present the unexhausted claims to the state courts so that, if he fails to obtain relief there, he may then properly pursue those claims by means of the present petition.

For the reasons set forth below, I conclude that the petition contains only one exhausted and several unexhausted claims; that the petitioner's request for a stay of proceedings should be denied; and that the petitioner should be given the choice either to accept dismissal of the entire petition without prejudice as a "mixed" petition, *see Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), or to voluntarily dismiss the unexhausted claims without prejudice and proceed to examination of the merits of the exhausted one.

### Exhaustion of State Remedies

After a trial in the Massachusetts Superior Court, the petitioner was convicted by a jury of murder in the second degree as a joint venturer, armed assault with intent

Rosemary C. Scapicchio, Law Office of Rosemary C. Scapicchio, Boston, MA, for Jason Clements, Petitioner.

to murder as a principal, and illegal possession of a firearm. His post-trial motions for a required finding of not guilty and for a new trial were denied by the trial judge. The petitioner then pursued a consolidated appeal from the verdict and the denial of the post-trial motions.

In his argument to the Massachusetts Appeals Court, the petitioner made nine claims of error that I summarize as follows:

(1) the trial court improperly coerced a verdict when it ordered jurors to continue deliberating after they had twice indicated they were deadlocked;

(2) the trial court erred in continuing to question jurors during deliberations after it became apparent that such questioning would invade the autonomy of the deliberations;

(3) the trial court's questions to deliberating jurors invaded the jury's province and violated the petitioner's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution, as well as under the Massachusetts Declaration of Rights;

(4) the trial court violated the petitioner's rights under the Sixth and Fourteenth Amendments as well as the Massachusetts Declaration of Rights by permitting the prosecution to read portions of a witness's grand jury testimony and permitting the jury to consider it as substantive evidence;

(5) the trial court violated the petitioner's Sixth Amendment right to confront and cross-examine witnesses by admitting the witness's grand jury testimony after the witness had been excused from the stand;

(6) the trial court erred in permitting the verdict of guilty by joint venture to stand where it was inconsistent with the jury's verdict acquitting the petitioner's co-defendant and alleged co-venturer;

(7) the trial court violated the petitioner's right under the Sixth and Fourteenth Amendments to be present at all stages of the trial when it excluded him from the court's questioning of deliberating jurors;

(8) the trial court erred in permitting the prosecution to offer evidence that the petitioner had sold drugs in the area where the murder occurred; and

(9) the petitioner would have been entitled to a required verdict of acquittal if the evidence that should have been excluded had in fact been excluded.

*See* Supplemental Answer, Ex. 2, Appellant's Br.

In his brief to the Appeals Court, the petitioner argued the first ground—that the trial judge coerced a verdict—on state law grounds only. Specifically, the petitioner argued that the trial judge's refusal to declare a mistrial violated a state statute, Mass. Gen. Laws ch. 234, § 34, which forbids a judge from ordering a jury to continue to deliberate after the jury has twice reported an inability to agree. *Id.* at 29–36. Although the brief contains a citation to a single federal appellate decision and a general reference to the petitioner's constitutional rights, fairly understood in context the argument was focused on the judge's failure to meet the requirements of the state statute. There was no developed state or federal constitutional argument.

Similarly, the argument of the second ground—that the judge's questioning invaded the autonomy of the jury—was also supported almost entirely by citations to Massachusetts cases and was couched in general terms, without specific constitutional assertions. Two federal cases were among the dozen or so case citations, but there was neither any identification of a federal constitutional issue or developed constitutional argument. *Id.* at 36–38.

The third ground presented—that the trial judge's questions suggested that the jurors should ignore the opinion of a hold-out juror and thus invaded the province of the jury in violation of provisions of both the federal and state constitutions—was framed and argued with reference to both federal and state legal authorities, including the Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 38–41.

The fourth ground—that the trial court erred when it permitted the prosecution to introduce as substantive evidence a witness's grand jury testimony that was inconsistent with his trial testimony—was phrased in the heading of the relevant section of the brief in terms of both federal and state constitutional principles, but it was argued in the body of the brief entirely in terms of state law. *Id.* at 41–45.

The fifth ground—that the admission of the grand jury testimony after the witness had been excused from the stand violated the petitioner's right to confront witnesses—was argued explicitly in both federal and state constitutional terms. *Id.* at 46–47.

The sixth ground—the combined argument that the petitioner could not be convicted as a joint venturer where the jury acquitted the alleged principal and that such verdicts were inconsistent—was presented in state law terms with no reference to federal constitutional principles. The petitioner cited two federal cases for their logic, not for their authority concerning federal constitutional issues. *Id.* at 47–52.

The seventh ground—that the petitioner's right to be present at every stage of the trial was violated when the judge questioned jurors in his absence—was presented and argued in both federal and state constitutional terms. *Id.* at 52–55.

The eighth ground—that the trial judge improperly admitted evidence of the petitioner's prior drug activity—was framed and argued as an issue of state evidence law. No federal constitutional argument was framed or made. *Id.* at 55–59.

The ninth ground—that without the disputed grand jury testimony the petitioner would have been entitled to a directed finding of not guilty—was presented and argued entirely in state law terms. No federal constitutional issue was identified or argued. *Id.* at 59–61.

In sum, the petitioner made an argument that his federal constitutional rights had been violated only with respect to grounds 3, 5, and 7 presented in his brief to the Massachusetts Appeals Court.

The Appeals Court affirmed the petitioner's convictions and the denial of his post-trial motions. *Commonwealth v. Clements*, 51 Mass.App.Ct. 508, 747 N.E.2d 682 (2001) ("*Clements I*"). The petitioner then filed an Application for Further Appellate Review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC"). Such an application for further review is granted or denied in the discretion of the SJC, generally similar to a petition for a writ of certiorari addressed to the United States Supreme Court. In his ALOFAR, the petitioner, represented by the same appellate counsel who had taken his appeal to the Appeals Court (and who continues to represent him in his present habeas petition), sought review of three issues, phrased by the petitioner as follows:

A. Whether the Appeals Court's decision holding that inconsistent, recanted extrajudicial statements of identification constituting the sole evidence of guilt is sufficient to convict pursuant to *Commonwealth v. Daye,* 393 Mass. 55, 469 N.E.2d 483 (1984)?

B. Whether the jury's special verdict, finding the defendant guilty as a joint venturer but not as the princip[al] of the crime of second degree murder was supported by sufficient evidence to convict?

C. Whether the Appeals Court failed to address Clements' claim that instructions to deliberating jurors to ignore the opinion of the lone holdout invaded the province of the jury and violated Clements' right to a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution as well as Article XII of the Massachusetts Declaration of Rights?

*See* Supplemental Answer, Ex. 5, Def's Application for Further Appellate Review ("ALOFAR"), at 1.

The SJC granted the ALOFAR as to the issue denominated "A" above and, after further briefing, affirmed the petitioner's conviction, concluding that the prior inconsistent grand jury testimony was not the sole evidence supporting the guilty verdict and that it, along with other evidence, was sufficient to support the verdict. *Commonwealth v. Clements*, 436 Mass. 190, 763 N.E.2d 55, 59–60 (2002) ("*Clements II*").

■ This first issue was the same as the argument denominated "4" in the petitioner's Appeals Court brief. As noted above, in that earlier brief the petitioner referred to the federal Constitution in the heading to his argument, but the argument itself addressed state law principles only and made no reference to federal law. Similarly, the ALOFAR did not advance an argument on federal grounds, either in the framing of the issue or the body of the argument. *See* Supplemental Answer, Ex. 5, ALOFAR, at 4–7. After the SJC granted the petitioner's ALOFAR as to this issue, the petitioner's merits brief again, as in the body of the argument to the Appeals

Court, presented the claim only in terms of the leading Massachusetts case, *Commonwealth v. Daye*, 393 Mass. 55, 469 N.E.2d 483 (1984), with no argument based on federal constitutional principles. *See* Supplemental Answer, Ex. 7, Br. and Supplemental App. on Appeal, passim.

There is a substantive difference between an argument against the full admission of prior inconsistent grand jury testimony that is based on federal constitutional principles and an argument against admission under *Daye* for failure to satisfy the requirements of the state law of evidence. *Daye*, 469 N.E.2d at 483. The potential federal constitutional issue is whether the admission of the inculpatory extrajudicial statements violated the Confrontation Clause of the Sixth Amendment. *See California v. Green*, 399 U.S. 149, 158, 165–68, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (holding that the admission of an inculpatory extrajudicial statement did not violate the Sixth Amendment when the declarant was a witness at trial and subject to cross-examination about the prior statement). In *Daye*, the SJC held that prior grand jury testimony by a witness, inconsistent with the witness's trial testimony, could be admitted not only for impeachment but for its full probative value, provided that two conditions were met: (1) there must be "an opportunity for effective cross-examination of the declarant at trial," thus falling within the constitutional bounds as described in *Green*; and (2) the grand jury testimony must clearly be that of the witness (and not, for instance, just a perfunctory assent to a prosecutor's leading question). *Daye*, 469 N.E.2d at 494–96. In addition, the SJC held that such evidence alone would not be sufficient to support a conviction. In order to meet its burden of proof, the prosecution must introduce other evidence tending to prove

the disputed issue. *Id.* In other words, *Daye* addressed both the question of the admissibility of the prior grand jury testimony and the question of its sufficiency to support a guilty verdict. *See Clements II,* 763 N.E.2d at 58. The question of the probative sufficiency of the evidence is, in the first instance anyway, simply a matter of Massachusetts law. This is how *Daye* addressed the question, and it is also how the issue was argued by the petitioner to the SJC. In contending that the "inconsistent, recanted extrajudicial statements of identification, constituting the sole evidence of guilt, cannot be sufficient to sustain the conviction pursuant to *Daye*," Supplemental Answer, Ex. 7, Commonwealth's Supplemental Br. on Appeal, at 15, the petitioner was arguing that the Massachusetts rule of sufficiency had not been satisfied, not that the federal Constitution had been violated. Though there was a federal constitutional principle in the background, the error claimed by the petitioner in his argument to the SJC was not a federal constitutional error.

The exhaustion of remedies prerequisite, *see* 28 U.S.C. § 2254(b) and (c), requires that a habeas petitioner has given state courts an " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before seeking relief from a federal court. *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citing *Dun-*

*can v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)).

To show that he has fairly presented his federal claim to the state courts, a "petitioner must show that 'he tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question.' " *Barresi v. Maloney,* 296 F.3d 48, 51 (1st Cir.2002) (quoting with elisions *Casella v. Clemons,* 207 F.3d 18, 20 (1st Cir.2000)). "In determining whether a petitioner presented his or her federal claims to the state's highest court 'face-up and squarely,' *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir.1988), [a court must] consider issues of probability—whether it is more likely than not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented." *Barresi,* 296 F.3d at 52.

Ordinarily, determining whether a petitioner has "fairly presented" a federal claim to the highest state court is accomplished by examining the ALOFAR. *See Adelson v. DiPaola,* 131 F.3d 259, 263 (1st Cir.1997) ("[T]he decisive pleading is the application for further appellate review, and we must determine whether the petitioner fairly presented the federal claim to the SJC within 'the four corners' of that application.")(quoting *Mele v. Fitchburg Dist. Ct.,* 850 F.2d 817, 823 (1st Cir.1988)). Under some circumstances, however, it may also be appropriate to consult the pleadings and briefs filed in the lower courts to gain a proper understanding of what issues the ALOFAR proposes to raise. *See Barresi,* 296 F.3d at 52. For example, ambiguous phrasing in the statement of an issue in the ALOFAR may lead to uncertainty about whether the argument is intended to be advanced under state or federal law. Consulting the man-

ner in which the same issue was framed in prior pleadings may resolve the ambiguity. *See Scarpa v. DuBois*, 38 F.3d 1, 7 n. 1 (1st Cir.1994).[1] On the other hand, the clear omission of an earlier made argument from the ALOFAR signals its abandonment, and in this circumstance "it is entirely appropriate to limit the exhaustion inquiry to the 'four corners' of the ALOFAR." *Barresi*, 296 F.3d at 52 n. 1.

As to the claim that was accepted for further review by the SJC, the inquiry properly focuses on the manner in which—and the theory under which—that claim was argued in the relevant papers, including both the ALOFAR and the following brief. As to claims that were not accepted for further review by the SJC, the principal focus is the statement of the claims in the ALOFAR, illuminated as appropriate by reference to the petitioner's argument of those issues in prior pleadings in the lower courts. *See id.*

As noted above, the claim argued to the SJC on further appellate review was couched in terms of state law only. Reading the petitioner's brief, a reasonable jurist would have focused on whether the requirement of corroboration imposed by *Daye* had been met by the prosecution's evidence. (The SJC clearly read the argument that way and found that it had been.) By the same token, a reasonable jurist would not have concluded that the petitioner's argument, which focused on *Daye* and its application to the facts of the case, was either (i) that the Confrontation Clause of the Sixth Amendment had been violated because prior inconsistent grand jury testimony by a trial witness was admitted or

(ii) that the Due Process Clause of the Fourteenth Amendment had been violated because the evidence of guilt was so thin that no rational juror could have been persuaded of the petitioner's guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 312, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Any such claims were not "fairly presented" in the petitioner's ALOFAR or brief to the SJC, and they therefore cannot be considered exhausted for habeas purposes.

■ As to the other claims set forth in the ALOFAR, which the SJC did not accept for review, one was expressly a federal claim, and the other was not. The argument denominated "C" in the petitioner's ALOFAR expressly set forth the claim that the trial judge's instructions to the deliberating jury improperly invaded the province of the jury in violation of the petitioner's rights under the Sixth and Fourteenth Amendments. Although the SJC did not grant further review as to that claim, it was fairly presented by the petitioner for review as a federal claim, and as to it the petitioner has properly exhausted his state court remedies.

■ The remaining argument presented in the ALOFAR, denominated "B," was that the jury's special verdict finding him guilty of second degree murder as a joint venturer was not supported by sufficient evidence. This claim was presented in the ALOFAR purely as an issue of state law. The cases cited by the petitioner in support of the claim were exclusively Massachusetts cases. In essence, the petitioner's argument was about the particular

---

1. The Supreme Court's decision last year in *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004), limited the extent to which the "fairly presented" determination could be made by reference to issues found in the record of lower state court proceedings but not squarely presented in the application for review made to the highest state court. That decision may vitiate much of the *Barresi-Scarpa* exception to the "four corners" rule. However, that conclusion is not a necessary predicate to the resolution of the issues addressed here.

evidence in his case and whether it was sufficient to prove guilt by a theory of joint venture under Massachusetts law. At some level, an argument about the insufficiency of the evidence to support a guilty verdict might be couched in federal constitutional terms, *see Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781,[2] but the petitioner did not do so in his ALOFAR, or for that matter, in his appellate brief addressed to the Appeals Court. *See* Supplemental Aff., Ex. 3, Commonwealth's Br. on Appeal, at 47–50. It is not probable that a reasonable jurist would have understood the petitioner to be making a *Jackson*-based federal constitutional argument, rather than, as explicitly set forth, an ordinary state law argument about the sufficiency of the evidence to support the verdict. Accordingly, the petitioner has failed to exhaust any federal claim with respect to the sufficiency of the evidence argument.

In summary, then, the petitioner has exhausted only one federal constitutional claim: that the trial judge's instructions improperly interfered with the jury's autonomy in violation of the Sixth and Fourteenth Amendments. That claim is presented in his habeas petition as the first argument under "Ground Two." As "Ground Two" for his petition, the petitioner asserts:

THE STATE COURT VIOLATED CLEMENTS' RIGHTS TO A FAIR TRIAL PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION IN HOLDING THAT THE TRIAL JUDGE DID NOT INVADE THE PROVINCE OF THE JURY AND COERCE A GUILTY VERDICT DURING INDIVIDUAL

VOIR DIRES OF DELIBERATING JURORS WHO EACH INFORMED THE TRIAL JUDGE THAT THEY WERE ATTEMPTING TO PRESSURE THE LONE HOLD–OUT INTO CONVICTING CLEMENTS.

The first argument under this section of the petition is headed, "The pressure on the jury to convict." In this portion of his petition, the petitioner presents his only exhausted federal claim, as described above. As a second argument under "Ground Two," he also argues that his "federal constitutional rights" were violated by the "trial court's refusal to declare a mistrial after the jury twice reported they were deadlocked." To the extent that this second argument under "Ground Two" is different from the first, it was not exhausted. As pointed out above, the petitioner's argument to the Appeals Court on this issue was couched solely in terms of a Massachusetts statute, not federal constitutional grounds, and he did not raise the argument at all in his ALOFAR.

All the other putative grounds for habeas relief set forth in the petition are unexhausted. Some of the grounds were argued to both the Appeals Court and the SJC, but only in state law terms. These include the second argument under the petition's "Ground Three" (a conviction could not be based on prior grand jury testimony alone) and the first argument under "Ground Six" (the evidence was insufficient to convict as a joint venturer). Some were argued to the Appeals Court in state law terms only, and then were not presented at all to the SJC. These include the second argument under "Ground Two" described above (the trial judge improperly refused to declare a mistrial after the second report of deadlock); "Ground Five"

**2.** *But see Stewart v. Coalter*, 48 F.3d 610, 613–14 (1st Cir.1995) (questioning continued vitality of *Jackson* ).

(the trial judge improperly admitted evidence of the petitioner's drug selling); and the second argument under "Ground Six" (verdicts convicting the petitioner as a joint venturer and acquitting alleged principal were inconsistent). Some were argued to the Appeals Court in federal constitutional terms, but not presented to the SJC in the ALOFAR. These include "Ground One" (petitioner's Sixth Amendment right to be present at jury voir dire was violated) and the first argument under "Ground Three" (petitioner's Sixth Amendment right to confront witnesses was violated when grand jury testimony was presented after declarant had been excused as trial witness). And one claim in the petition, "Ground Four" (cumulative impact of all errors denied petitioner due process) was never made either in the Appeals Court or the SJC, in either federal or state terms.

The petitioner makes the weak argument that, with respect to the two ALOFAR grounds that are presented in state law terms only (those denominated "A" and "B" in the ALOFAR), this Court should look back to the Appeals Court briefing to discern the federal nature of the arguments. This is wrong for two reasons. First, the claims in the ALOFAR are unambiguously state claims, so the *Barresi-Scarpa* exception to the "four corners" rule, if still viable after *Baldwin,* is not invoked. Second, if there were to be a backwards look to determine the nature of the claims, it would be discovered that the claims were argued only in state law terms to the Appeals Court, for the reasons explained above.

The petitioner also makes the wholly untenable argument that even the claims entirely omitted from the ALOFAR should be considered exhausted because the ALOFAR gave the SJC the opportunity to find them in the trial and prior appellate rec-

ord. That proposition has been rejected by the Supreme Court. *Baldwin,* 541 U.S. at 31, 124 S.Ct. at 1351 ("We consequently hold that ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

### Request for a Stay

■ Formerly, a "mixed" habeas petition such as this one (presenting both exhausted and unexhausted claims) was subject to dismissal without prejudice in its entirety. *See Rose,* 455 U.S. at 510, 102 S.Ct. 1198. The petitioner could then return to the state courts and pursue exhaustion of the previously unexhausted claims. If unsuccessful in obtaining the desired relief on his federal claims from the state courts, he could return to the federal court and present all the claims previously asserted, including those both originally and now lately exhausted.

The Antiterrorism and Effective Death Penalty Act of 1996 amended the habeas statute to impose a one-year statute of limitations on habeas petitions. 28 U.S.C. § 2244(d). Because dismissal of an entire mixed petition will include the dismissal of those claims already fully exhausted, there is now the danger that, absent any tolling of the limitations period with respect to those claims, by the time the state court proceedings regarding the unexhausted claims have been completed, the original properly exhausted claims may be barred by the expiration of the limitations period. And while the limitations period is tolled for claims that are the subject of ongoing applications for state post-conviction or other collateral review, 28 U.S.C. § 2244(d)(2), it would presumably not be

tolled for those claims already fully exhausted.

*Rose* also contemplated that a petitioner might, after dismissal of the "mixed" petition, file an amended or substitute petition that presented only fully exhausted claims. *Rose*, 455 U.S. at 510, 102 S.Ct. 1198. Such a course now especially recommends itself to petitioners who want to avoid the risk of having the presently exhausted claims ultimately barred by the limitations provision if they should be reserved for re-presentation in a later petition that would include both them and the presently unexhausted claims.

Still, following this course presents another disadvantage to the petitioner. If he proceeds to litigate his exhausted claims by a timely amended petition, while in the state courts he seeks also to exhaust his unexhausted claims, he may find that a later habeas petition seeking to present the latter is greeted by the respondent's motion to dismiss under the "second or successive petition" branch of the "abuse of the writ" doctrine. *See* 28 U.S.C. § 2244(b); Rule 9 of the Rules Governing Section 2254 Cases in the United States District Court. Indeed, Rule 9 requires that he get the approval of the Court of Appeals to file such a petition.

█ Petitioners faced with this dilemma have increasingly sought to stay the litigation of the exhausted claims pending exhaustion of the unexhausted ones, so that when exhaustion of all the claims has been finally accomplished, all claims can be litigated in a single, timely filed (if not expeditiously prosecuted) petition. The First Circuit has said that such a course may be appropriate in many cases, *see Neverson v. Bissonnette*, 261 F.3d 120, 126 n. 3 (1st Cir.2001), and I have followed that course in some cases. However, that course is not necessarily appropriate for every case, and I decline to follow it here.

Indeed, it seems to me that staying the petition pending the pursuit of new relief in the state courts should be reserved only for exceptional cases where it would be inequitable or unjust to do otherwise, such as where it was impossible or impracticable for the petitioner to have pursued the unexhausted claims in the state proceedings that resolved the exhausted ones. I think it unwise and inconsiderate of the plain congressional purpose in imposing a relatively short limitations period for habeas petitions to grant a stay so that a petitioner may tardily pursue claims that, aided throughout by competent counsel, he voluntarily chose not to present fully to the state courts.

In this case, the petitioner in his first stage of appeal to the Massachusetts Appeals Court presented nine separately stated claims of error, some of which were couched solely in terms of state law. After the Appeals Court rejected all the grounds presented and affirmed the convictions, the petitioner pursued the next step available in direct appeals under Massachusetts law by presenting an ALOFAR to the SJC. Rather than present the nine grounds argued to the Appeals Court, however, the petitioner sought further review of only three. Only one of the three presented a federal constitutional issue. As noted above, these decisions were made with the advice of the same counsel who represents him now with respect to his habeas petition.

The habeas exhaustion requirement is not new. The AEDPA-added limitations period for § 2254 petitions is no longer new. Competent counsel practicing in the field of criminal law are surely aware how both these conditions can affect the viability of a habeas petition. Counsel also surely know how to preserve a federal issue for habeas review by taking care to present it fairly and unambiguously to the state

courts. It may be that for tactical or other reasons some claims presented at the intermediate appellate level are jettisoned from the application for further review by the state's highest court. However, when a deliberate decision has been made to do so, as here, there is no call for special indulgence from this Court to assist the tactical reassertion of the abandoned claims when the purpose suits.

Accordingly, the entire petition will be dismissed unless the petitioner elects to voluntarily dismiss the unexhausted claims within 35 days from the date of this order. If he does so elect, those claims shall be dismissed without prejudice and the petition shall be entertained on the merits as to the single exhausted claim.

It is SO ORDERED.