# United States Court of Appeals
## For the First Circuit

No. 05-2411

JASON CLEMENTS,

Petitioner, Appellant,

v.

MICHAEL T. MALONEY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr, Senior Circuit Judge,
and Singal,* District Judge.

Rosemary Curran Scapicchio for appellant.
Randall E. Ravitz, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, was on brief for appellee.

April 30, 2007

_____

* Of the District of Maine, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.** This case, involving the exhaustion requirement for habeas petitioners, requires us to examine some particulars of Massachusetts appellate procedure. Although we note the possibility that a portion of one of our prior decisions, <u>Barresi</u> v. <u>Maloney</u>, 296 F.3d 48 (1st Cir. 2002), might no longer be valid in light of the Supreme Court's decision in <u>Baldwin</u> v. <u>Reese</u>, 541 U.S. 27 (2004), we need not decide that question here. We conclude that the habeas petitioner in this case succeeded in exhausting one claim, which the district court found unexhausted, because of the then-existing Massachusetts Rules of Appellate Procedure. We also find, however, that another claim was properly deemed unexhausted by the district court because the state rules do not reach as far as the petitioner has suggested. We therefore affirm in part, reverse in part and remand as to one claim.

## I.

### A. State Court Proceedings

Because the specific facts of the crime underlying this case are not particularly relevant, we recount them only briefly, with the rebuttable presumption that factual findings by the state courts are correct. <u>See</u> 28 U.S.C. § 2254(e)(1). A more complete recitation of the facts can be found in the Massachusetts Supreme Judicial Court's ("SJC") opinion, <u>Commonwealth</u> v. <u>Clements</u>, 763 N.E.2d 55 (Mass. 2002).

Clements was convicted of murdering Gregory Tillery in 1995. Tillery was shot on a street corner by a man wearing a hooded sweatshirt. An eyewitness identified Clements as the killer while testifying before the grand jury, but recanted that testimony at trial. The remainder of the evidence presented by the government was circumstantial. Clements was convicted on charges of murder in the second degree by joint venture, armed assault with intent to murder, and unlicensed possession of a gun. A co-defendant was acquitted.

Clements was given a life sentence, and he immediately appealed his convictions. His motion for a new trial was denied, and he appealed that decision as well. Clements made nine separate legal arguments to the Appeals Court, but his conviction was affirmed.[1] Thereafter, he filed an Application for Leave to Obtain Further Appellate Review (ALOFAR) with the SJC, raising only three legal claims.[2]

---

[1] The nine legal claims presented to the Appeals Court were described in some detail by the district court. See Clements v. Maloney, 359 F. Supp. 2d 2, 5 (D. Mass. 2005). They are also summarized, of course, in the decision issued by the Appeals Court. See Commonwealth v. Clements, 747 N.E.2d 682, 685 (Mass. App. Ct. 2001).

[2] Those claims appeared in the ALOFAR as follows:
(A) Whether the Appeals Court's decision holding that inconsistent, recanted extrajudicial statements of identification constituting the sole evidence of guilt is sufficient to convict pursuant to Commonwealth v. Daye, 393 Mass. 55 (1984)? [the "sufficiency claim"]
(B) Whether the jury's special verdict, finding the defendant guilty as a joint venturer but not as the

-3-

The SJC granted further appellate review, limited to the sufficiency claim, and affirmed the conviction. The SJC held that the recanted testimony was not the sole evidence of guilt, as Clements claimed, and that there was sufficient evidence to support the verdict. Clements' argument in support of this claim, both in his ALOFAR and his supplemental brief to the SJC, relied exclusively on state law.

## B. Federal Court Proceedings

After the SJC rejected his direct appeal, Clements filed this habeas petition in the district court raising six legal claims. Three of them were the ones included in the ALOFAR. Two of the other three had been argued to the state Appeals Court. One had not previously been raised in any court. In response to the state's motion to dismiss, Clements argued that he had fully exhausted his state remedies on all six claims and that, if some claims were found unexhausted, he should be granted a stay in federal court so that he could return to state court to exhaust his remaining claims without fear of exceeding AEDPA's one-year statute

princip[al] of the crime of second degree murder was supported by sufficient evidence to convict? [the "joint venture claim"]
(C) Whether the Appeals Court failed to address Clements' claim that instructions to deliberating jurors to ignore the opinion of the lone holdout invaded the province of the jury and violated Clements' right to a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution as well as Article XII of the Massachusetts Declaration of Rights? [the "jury hold-out claim"]

-4-

of limitations. The district court carefully reviewed the claims Clements raised in his habeas petition, looking first at the claims that had been included in his ALOFAR and then at the claims excluded therefrom, and concluded that only the jury hold-out claim was exhausted because it was the only one "fairly presented by the petitioner for review as a federal claim."[3]

More specifically, the court found that both the sufficiency and the joint venture claims were presented to the SJC solely as state law claims and that they therefore had not been exhausted. As to both of these claims, the district court stated that no federal cases were cited and the ALOFAR did not articulate any federal issues in a recognizable way.

With respect to the claims raised in the habeas petition that had not appeared in the ALOFAR, the court found that three of these claims were presented to the Appeals Court as state law claims, while two were originally argued in reliance on both state and federal law. One claim appeared in the habeas petition, despite not being raised before either the Appeals Court or SJC.[4]

---

[3] The habeas petition combined the jury hold-out claim with another related issue, which had not been included in the ALOFAR, as part of a single "claim." Thus, one of the six habeas claims comprises two separate arguments, one of which was found exhausted by the district court (the hold-out claim) and one of which was not (a claim that the trial court should have ordered a mistrial after the jury twice announced it was deadlocked). The exhaustion of the jury hold-out claim is not disputed in this appeal.

[4] The district court broke some of the habeas claims down into sub-claims; while the habeas petition listed six grounds for

-5-

Clements argued that all of these claims had some basis in federal law, and that they ought to be found exhausted because a review of the brief filed with the Appeals Court revealed those federal bases. The district court found Clements' arguments meritless because the Supreme Court's decision in Baldwin v. Reese, 541 U.S. 27, 32 (2004), held that a claim cannot be exhausted if it is not presented directly to the state's highest court.

Finally, the district court rejected Clements' request for a stay of his habeas petition because the failure to exhaust was a result of "deliberate," "tactical" decisions by Clements' counsel. The court noted our decision in Neverson v. Bissonnette, 261 F.3d 120, 126 n.3 (1st Cir. 2001), which endorsed granting stays in certain cases, but concluded that this case did not merit a stay. The district court issued a provisional decision, allowing Clements to decide whether to proceed in federal court on his single exhausted claim (by voluntarily dismissing the other, unexhausted claims) or to dismiss his whole petition and return to state court.

Clements requested additional time to respond to the district court's provisional order, citing the Supreme Court's then-recent decision regarding "mixed" habeas petitions, Rhines v.

---

relief, the district court analyzed ten distinct claims. See Clements, 359 F. Supp. 2d at 5-11; see e.g., supra note 3.

Weber, 544 U.S. 269 (2005).[5] The request was granted and Clements subsequently informed the district court that he would not voluntarily dismiss any of his habeas claims (in order to proceed with the exhausted claim), and that he "fe[lt] strongly that the Supreme Court's decision [in] Rhines v. Weber supports his request for a [s]tay." The district court then dismissed Clements' petition pursuant to its earlier provisional order.

## II.

The requirement that habeas petitioners exhaust all available state remedies was originally imposed by the Supreme Court in Rose v. Lundy, 455 U.S. 509, 518 (1982). Subsequently, Congress codified the requirement as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A), and also added a one year statute of limitations for the filing of habeas petitions, id. § 2244(d). Regardless of its source, the exhaustion requirement has long served to infuse into our habeas jurisprudence the interests of comity and federalism. See, e.g., Rose, 455 U.S. at 518-19 (finding that "'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,'" and that

---

[5] "Mixed" habeas petitions are those containing both exhausted and unexhausted claims. Rhines held that, where certain criteria are satisfied, such petitions should be stayed in federal court so that the petitioner can return to state court to complete the exhaustion process. 544 U.S. at 278.

-7-

"[a] rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error") (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)).

In order to exhaust a claim, the petitioner must "present the federal claim fairly and recognizably" to the state courts, meaning that he "must show that he tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)). This means that "the legal theory [articulated] in the state and federal courts must be the same." Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). This standard must be met, as a general rule, by "fairly present[ing]" a federal claim "within the four corners of the ALOFAR." Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 823 (1st Cir. 1988). We have previously held that a habeas petitioner may accomplish this by doing any of the following: (1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution. Gagne, 835

F.2d at 7. We have also noted that, in some situations, citations to state court decisions which rely on federal law or articulation of a state claim that is, "as a practical matter, [] indistinguishable from one arising under federal law," may suffice to satisfy the exhaustion requirement. Nadworny v. Fair, 872 F.2d 1093, 1099-1100 (1st Cir. 1989). It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988).

Clements contends that all six of his habeas claims have satisfied the exhaustion requirement because they were all presented to the Appeals Court with some citation or reference to federal cases. He explains that our precedent, Barresi v. Maloney 296 F.3d 48, 52 (1st Cir. 2002), permitting us to review certain "backdrop" materials in some cases, in combination with Massachusetts' procedural rules, effectively renders his brief to the Appeals Court "presented" to the SJC, meaning that all the arguments he made before the Appeals Court were made to the SJC. The government responds by arguing that our decision in Barresi has been invalidated by the Supreme Court's more recent decision in Baldwin v. Reese, 541 U.S. 27 (2004).

We begin with the two claims that were presented in the ALOFAR, which the district court found to be unexhausted: first the joint venture claim and then the sufficiency claim. We will

-9-

briefly comment on the government's argument about the continued vitality of our Barresi decision in the context of the joint venture claim. We then turn to the claims that were omitted entirely from the ALOFAR. Our review of the district court's decision regarding exhaustion is de novo. Goodrich v. Hall, 448 F.3d 45, 47 (1st Cir. 2006); Barresi, 296 F.3d at 51.

## A. Joint Venture Claim

One of Clements' three ALOFAR claims — the joint venture claim — was presented to the SJC solely in terms of state law. The portion of Clements' ALOFAR discussing this claim relied on no federal cases and did not label the claim as federal. It also made no arguments using vague (and possibly federal law based) phrases, such as "due process." Clements argues, nonetheless, that this claim was exhausted because, under Barresi, 296 F.3d at 52, the exhaustion analysis should include a review of "backdrop" materials, such as the Appeals Court brief, wherein he says that the federal nature of his claim was made clear. In order to evaluate this claim, we must determine whether Barresi applies to a claim styled like Clements' joint venture claim.

### 1. Barresi v. Maloney

In Barresi, we held that, where a claim has not been abandoned before the state's highest court, the exhaustion analysis includes an examination of the "'backdrop against which [] later filings [must] be viewed,'" 296 F.3d at 52 (second alteration in

-10-

original) (quoting Scarpa v. DuBois, 38 F.3d 1, 7 (1st Cir. 1994)), and that backdrop includes "the pleadings and filings submitted . . . to lower state courts," id.[6] Barresi also recognized the continued validity of the "four corners rule," see Mele, 850 F.2d at 821-23, and held that the "backdrop" materials could only be consulted "under certain circumstances." 296 F.3d at 52.

At that time, we did not specify what those limited circumstances might be. However, in Barresi itself, the ALOFAR at issue included claims regarding the right to confront adverse witnesses and due process, both of which are claims that may be grounded either in state law or federal law or both, and cited state court cases that relied upon federal law. Id. at 53-54. Therefore, we found that Barresi's ALOFAR minimally satisfied the exhaustion requirement. As part of the explanation for that conclusion, we noted that the same claims had been raised in the intermediate appellate brief, where Barresi had directly cited federal precedents. Id. at 55-56.

We have subsequently said that the Barresi backdrop rule applies only in cases where the ALOFAR (or other petition to a state supreme court) was ambiguous about the federal nature of a

---

[6] Although Barresi did not explicitly define or explain the term "abandoned," that term has been interpreted to mean that a claim was omitted entirely, meaning not argued on either state or federal grounds, from the ALOFAR (or similar petition to a state's highest court).

-11-

claim, as it was in Barresi.  See Josselyn v. Dennehy, 475 F.3d 1, 3-4 (1st Cir. 2007) (noting that Barresi's "backdrop" principle applies when there is ambiguity in the ALOFAR regarding the federal nature of the claim); Goodrich, 448 F.3d at 48 (reviewing the petitioner's lower court briefs as part of the exhaustion analysis, because the ALOFAR relied primarily on state cases, but was somewhat ambiguous about the source of the legal claim).

Because this case involves an ALOFAR that was not ambiguous, the Barresi "backdrop" principle, assuming it is still valid, provides no assistance to Clements.  We add that qualifier about the continuing validity of the "backdrop" principle because of the Supreme Court's decision in Baldwin v. Reese.

In Baldwin, 541 U.S. at 32, the Court held that, where a federal claim was not included in a petition, the exhaustion analysis could not encompass materials beyond the petition or brief filed with the state's highest court.  In that case, the defendant had filed a petition seeking discretionary appellate review by the Oregon Supreme Court and had argued some claims based on federal law and other claims based only on state law.  The defendant later filed a habeas petition and argued that at least one of the claims which was presented on state law grounds could be deemed exhausted because a review of the intermediate appellate court opinion showed that he had made federal law arguments on that claim below.  Pursuant to Oregon's procedural rules, Oregon's Supreme Court

-12-

justices had access to the lower court opinions in cases for which a petition was filed, but their rules did not require them to review such opinions. Id. at 31. Rather, the rules required a party seeking review to assert all claims in the appellate brief.

At the outset of its analysis, the Supreme Court noted its assumption that the defendant's "petition by itself did not properly alert the Oregon Supreme Court to the federal nature of" the claim. Id. at 30.[7] The Court then reasoned that, in such a context, permitting the exhaustion inquiry to include a review of the lower court opinion simply because the state court judges had an "opportunity" to review it would effectively mean "that those judges must read the lower court opinions — for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance." Id. at 31. The Supreme Court found that burden incompatible with the "considerations of federal-state comity that the exhaustion requirement seeks to promote." Id. at

---

[7] Although the Supreme Court clearly assumed that Baldwin's petition did not itself notify the state court that a federal claim was intended, the petition in that case was not entirely clear. The disputed claim involved the ineffective assistance of appellate counsel and relied only on state law. However, the petition raised a parallel claim regarding the ineffective assistance of the defendant's trial counsel, and did make federal law arguments for that claim. 541 U.S. at 30. Therefore, the petition in Baldwin was, in a certain sense, ambiguous, much like the ALOFAR in Barresi, because a reasonable jurist might have concluded that the defendant intended to make state and federal arguments as to both claims, given that they were based on the same legal principle, and that he simply failed to explicitly articulate federal law grounds for the claim concerning appellate counsel.

-13-

32. Therefore, the Court held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." Id.

The Barresi approach to the exhaustion analysis may be incompatible with Baldwin. Barresi permits us to consider lower court pleadings or opinions where the state court did not (and was not required to) consider them itself. However, as we have explained, we subsequently limited the Barresi backdrop principle to cases in which there is an ambiguity in the ALOFAR about the federal nature of the claim. Whether Baldwin forecloses consideration of backdrop materials even in cases of ambiguous petitions is a question we need not decide here because Clements' joint venture claim is unmistakably couched only in state law terms. We therefore reserve the issue of the continuing validity of Barresi's backdrop principle for a case in which it is directly raised.

2. Massachusetts' Procedural Rules

Clements offers an alternative to his Barresi argument in support of his claim that he fairly presented his joint venture claim to the SJC. He argues that Massachusetts Rule of Appellate Procedure ("MRAP") 27.1 permits him to rely on the brief that he

-14-

filed with the Massachusetts Appeals Court to demonstrate the exhaustion of his claim.

MRAP Rule 27.1 says that the full Appeals Court record should be transferred to the SJC after further appellate review is granted. At the time of Clements' appeal, the rule also stated that the SJC appeal would be conducted on the basis of the Appeals Court briefs.[8] See infra note 11 (explaining subsequent alteration of this rule). Clements contends that after further appellate review is granted (regardless of whether it is a limited or general grant[9]), the entire Appeals Court brief is properly "before" the

---

[8] Massachusetts Rule of Appellate Procedure 27.1 reads in part:

> Within twenty days after the date of the rescript of the Appeals Court any party to the appeal may file an application for leave to obtain further appellate review of the case by the full Supreme Judicial Court. . . . A copy of the rescript and opinion, if any, of the Appeals Court shall be appended to the application. . . . If any three justices of the Supreme Judicial Court shall vote for further appellate review . . . an order allowing the application or the certificate, as the case may be, shall be transmitted to the clerk of the Appeals Court . . . . The clerk shall forthwith transmit to the clerk of the full Supreme Judicial Court all papers theretofore filed in the case and shall notify the clerk of the lower court that leave to obtain further appellate review has been granted.

Mass. R. of App. P. 27.1 (a), (b), (e).
    The Reporter's Notes at the time Clements' appeal was filed also indicated that, after further appellate review is granted, "the case will be reviewed in the Supreme Judicial Court based on the brief that was earlier filed in the Appeals Court." Id. at Reporter's Notes to Appellate Rule 27.1(f) — 2001.

[9] The SJC has the authority to respond to an ALOFAR in any of three ways. It may reject an ALOFAR outright, thereby affirming the Appeals Court decision without further argument or explanation.

-15-

SJC, in the same way that the arguments contained in the ALOFAR were before the SJC. He contends that MRAP 27.1 has the effect, therefore, of rendering <u>all</u> the arguments he presented to the lower court exhausted because the SJC was in possession of the full Appeals Court record, including his Appeals Court brief. Citing this "possession," and the provision regarding reliance on the Appeals Court brief, Clements claims that the SJC is actually <u>required</u> by state rules to review the lower court papers. Consequently, he argues, his Appeals Court brief should be treated as a part of the SJC's evaluation of his claim, just as the ALOFAR is so treated, and not as additional or independent backdrop material.

Clements' argument mis-understands the significance of a limited grant of further appellate review. Clements relies on the provision which allows an appeal, after further review has been granted, to be argued on the basis of the Appeals Court brief for his contention that the entire brief (not just the portion relevant to a limited grant) must be reviewed by the SJC. See <u>Mele</u>, 850 F.2d at 822 (noting that MRAP 27.1 requires the lower court record

It may also grant an ALOFAR, thereby exercising its discretionary jurisdiction over the appeal and agreeing to consider all of the legal questions raised in that appeal. Or, the SJC may issue a limited grant in response to an ALOFAR, meaning that it has agreed to consider a single discrete issue (or multiple issues, but fewer than all) on appeal. <u>See</u> <u>infra</u> note 10. In this case, the SJC chose the last of these options, and thus reviewed only one of the three issues presented to it in Clements' ALOFAR.

to be forwarded to the SJC "only if — and <u>after</u> — it grants an ALOFAR"). As we have noted, the SJC in this case granted further review on only one issue (the sufficiency claim). Under Massachusetts rules, when the SJC issues a limited grant, it does not decide any issues beyond the one (or ones) granted review.[10] For this reason, the formal transfer of the Appeals Court record to the SJC does <u>not</u> require the SJC to review briefing or other materials relating to issues beyond the one(s) for which review was granted. Here, the SJC's receipt of the lower court record, including the Appeals Court brief, is relevant only to the one issue (sufficiency of the evidence) on which it exercised its appellate jurisdiction. On the issues for which review was denied, such as the joint venture claim, the physical transfer of the record and the use of the Appeals Court brief for argument on the sufficiency claim are irrelevant to the exhaustion inquiry.

We find further support for this conclusion in the general principles articulated in <u>Baldwin</u>, 541 U.S. at 31-32. Clements' interpretation of MRAP 27.1 would effectively require the SJC to read and evaluate all of the arguments presented to the

---

[10] By contrast, if the SJC issues a general grant of further appellate review, it may review any issue in the case, regardless of whether the appellant specifically raised it in the ALOFAR. In other words, a general grant renders the entire Appeals Court record subject to the SJC's jurisdiction, while a limited grant places only discrete issues within the SJC's jurisdiction. <u>See</u> <u>Bradford</u> v. <u>Baystate Med. Ctr.</u>, 613 N.E.2d 82, 85 (Mass. 1993). We do not address here the contours of an exhaustion analysis in the context of a general grant of further appellate review.

-17-

lower court after even a limited grant of further review, which is precisely what Baldwin sought to preclude. In claiming that a limited grant of further review places the full record (including both the trial court and appeals court proceedings) before the SJC, and that the exhaustion analysis should encompass that full record, Clements invites the federal habeas court to ignore the state's procedural rules. However, disregarding the difference between a limited grant and a general grant would contravene Baldwin. Baldwin clearly limits the exhaustion analysis to the materials that a state's highest court reviewed while deciding whether to grant a discretionary appeal or evaluating such an appeal on its merits. Id. at 32. Materials that are merely accessible to that court are not to be reviewed in an exhaustion inquiry.

Under MRAP 27.1, the portion of the Appeals Court brief relating to the joint venture claim was not before the SJC when it reviewed Clements' appeal on the merits. Therefore, our review of the district court's finding that the joint venture claim was not exhausted must be based solely on the contents of the ALOFAR.

3. Exhaustion of the Joint Venture Claim

Clements has not sought to persuade us that his ALOFAR described, or even hinted at, a federal basis for his joint venture claim. The ALOFAR's discussion of this claim refers only to state law, and none of the cited state cases relied on federal law. The federal basis for the claim was not presented "fairly and

-18-

recognizably," Casella, 207 F.3d at 20, nor did Clements articulate a federal law argument "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question," Scarpa, 38 F.3d at 6.  Without any references, explicit or implicit, to federal law or principles, the ALOFAR's presentation of the joint venture claim did not apprise the SJC of a possible federal error in the state court's decision.  Therefore, we agree with the district court's conclusion that the joint venture claim was not exhausted.

## B.  The Sufficiency Claim

Unlike the joint venture claim, the SJC granted Clements further appellate review for his sufficiency claim.  This important fact distinguishes our analysis of this claim from all other claims in this case, as well as the claims discussed in recent cases such as Goodrich, 448 F.3d at 47, and Josselyn, 475 F.3d at 3-4 (where the claims at issue were not even mentioned in the ALOFAR and were deemed abandoned when the ALOFAR was filed with the SJC).  The grant of further appellate review is significant, as we have explained, because of the procedural rules in Massachusetts.

Prior to a 2001 amendment, MRAP 27.1(f) stated that after further appellate review is granted, a party may elect to proceed with the appeal before the SJC on the basis of the Appeals Court brief previously filed or may petition for permission to submit a new ("separate or supplemental") brief.  See Mass. R. App. P.

-19-

Reporter's Notes -- 2001.  Clements requested, and was granted, permission to file a new brief.  At the time of Clements' appeal, the Massachusetts Rules did not expressly indicate whether the new brief would be considered exclusively or alongside the Appeals Court brief.  Because the Rules said that a new brief may be supplemental, we assume here that the SJC reviewed both the Appeals Court brief (on the sufficiency issue only) and the new or supplemental brief.[11]  Therefore, we examine the ALOFAR, the "supplemental" brief to the SJC, and the relevant portion of the Appeals Court brief — the materials actually reviewed by the SJC — to determine whether Clements' sufficiency claim was exhausted.

In his ALOFAR, relying on Massachusetts cases, Clements urged the SJC to reverse his conviction because the "inconsistent, recanted, extra judicial grand jury testimony" tying him to the crime was not corroborated by any more reliable evidence, and

---

[11] The government places significant weight on the fact that Clements labeled his new brief simply as "Brief" and did not designate it a "Supplemental" brief.  The title of the brief, as it appeared on the cover page, was "Brief and Supplemental Record Appendix."  The government filed a responsive brief, which it titled "Supplemental Brief."  We think the labels applied to these briefs are not helpful and we give them no weight.  Our assumption is, however, buttressed by a recent change in the Rules.  In 2004, the MRAP were modified so that a party who now elects to file a new brief must rely exclusively on that brief; in other words, the current rules require each party to submit to the SJC a single brief, which can be either the Appeals Court brief or (with the SJC's permission) a new brief.  Mass. R. App. P. 27.1 (f) (2004 Amendment).  This change suggests that previously parties were arguing in reliance on both the Appeals Court brief and the "separate or supplemental" brief.

therefore was insufficient under <u>Commonwealth</u> v. <u>Daye</u>, 393 Mass. 55 (1984). Clements argues that this claim was exhausted because his Appeals Court brief included a citation to a Supreme Court decision, <u>Barber</u> v. <u>Page</u>, 390 U.S. 719, 725 (1968), for the simple proposition that the right to confront adverse witnesses is "a trial right."[12]

We find it doubtful that this single cite to a Supreme Court case is enough to satisfy the fair presentation requirement. However, Clements' Appeals Court brief did label this claim as follows: "The Court violated Clement's rights pursuant to the Sixth and Fourteenth Amendments as well as Article XII of the Massachusetts Declaration of Rights, when it held at trial and on the motion for a new trial that the jury could consider Willis' grand jury identification as substantive evidence of Clement's [sic] guilt." In <u>Baldwin</u>, the Supreme Court found that such labeling of a claim would be enough to satisfy the fair presentation requirement. 541 U.S. at 32 (noting that a petitioner who "wish[es] to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on

---

[12] Clements' ALOFAR and Supplemental Brief indisputably did not argue this claim on a federal law basis. The arguments therein relied only on state law. The state cases cited by Clements also did not rely upon federal law.

federal grounds, or by simply labeling the claim 'federal'"). Therefore, with this label the sufficiency claim was exhausted, and the district court erred in ruling otherwise.

## C.  Clements' Four Other Claims

Clements' habeas petition included, in addition to the three ALOFAR claims (the joint venture and sufficiency claims discussed above, and the jury hold-out claim found exhausted by the district court), four additional claims.[13]  Three of these four claims were presented to the Appeals Court, but none were raised before the SJC because they were not mentioned in the ALOFAR.[14]

Both Baldwin, 541 U.S. at 32, and Barresi, 296 F.3d at 52 n.1, explicitly hold that claims omitted from an ALOFAR (or similar petition) are unexhausted.  See also Josselyn, 475 F.3d at 3 ("We observed [in Mele], that finding exhaustion where a claim appeared in the Appeals Court's decision but was omitted from the ALOFAR

---

[13] One of these claims was presented in tandem with the jury hold-out claim, as described above.  See supra note 3.

[14] These claims were as follows: Habeas claim one was a due process violation of Clements' right to a fair trial, based on his absence from the courtroom during the trial court's inquiry into one of the juror's potential biases.  Habeas claim four was a cumulative error claim, based on all of the mistakes Clements alleges were made by the trial court.  This claim was not mentioned by Clements in his brief filed with us.  Habeas claim five was a due process violation resulting from the trial court's admission of evidence of Clements' prior bad acts (namely, his prior and current — at the time of the crime — involvement with drug use and sales). The second sub-part of habeas claim two, see supra note 3, argued that the trial judge committed error in failing to order a mistrial after the jury indicated its deadlock twice.

-22-

would unfairly require 'the SJC to go over each and every opinion of the [Appeals Court] with a fine tooth comb, in an unremitting search for errors that the parties have neglected to pursue . . . .'") (second alteration in original)(quoting Mele, 850 F.2d at 823). The district court therefore correctly ruled that these four claims, omitted from the ALOFAR, were not exhausted.

## D. Nature of the Remand

We have now determined that, in addition to the jury hold-out claim deemed exhausted by the district court, the sufficiency claim was also exhausted. Clements' habeas petition remains mixed, and he cannot proceed on a mixed petition. See Rose, 455 U.S. at 520-22. Where a petition is deemed mixed, district courts must either dismiss the petition (in compliance with the "total exhaustion rule" announced in Rose, id. at 522) or permit the petitioner to dismiss his unexhausted claims, id. at 520. Therefore, we remand the petition to the district court, where Clements should be given the opportunity to dismiss his unexhausted claims. See Kelly v. Small, 315 F.3d 1063, 1069-70 (9th Cir. 2003) (remanding an entire petition to the district court, after finding three claims exhausted despite district court finding to the contrary, and instructing the district court to allow the petitioner an opportunity to dismiss unexhausted claims); see also Vang v. Nevada, 329 F.3d 1069, 1076 (9th Cir. 2003); Valerio v. Crawford, 306 F.3d 742, 771 (9th Cir. 2002) (en banc);

-23-

Rockwell v. Yukins, 217 F.3d 421, 425 (6th Cir. 2000); Murray v. Wood, 107 F.3d 629, 632 (8th Cir. 1997).[15]  If Clements declines to dismiss his unexhausted claims, the district court should dismiss the entire petition without prejudice.

**III.**

The final issue on appeal is the district court's denial of a stay of the entire petition to allow Clements to return to state court with his unexhausted claims.  We affirm the court's decision.  Although the court entered its provisional order before Rhines v. Weber, 544 U.S. 269 (2005), was decided, and therefore did not apply the standard articulated therein, its result is consistent with that standard.

In Rhines, the Court identified the three prerequisites for the "stay and abeyance" procedure.  Id. at 277.[16]  The phrase "stay and abeyance" means that the petitioner would receive a stay in his federal habeas case, permitting him to return to state court to complete the requirements for exhaustion on any unexhausted

_____

[15] One court has used a different approach, simply affirming the dismissal of the unexhausted claims and remanding the exhausted claims.  See Akins v. Kenney, 341 F.3d 681, 687 (8th Cir. 2003), vacated on other grounds, 544 U.S. 957 (2005).

[16] The "stay and abeyance" procedure is a response to AEDPA's one-year statute of limitations and total exhaustion requirement; it was endorsed by a number of circuit courts, including ours, prior to the Supreme Court's decision in Rhines.  See, e.g., Neverson v. Bissonnette, 261 F.3d 120, 126 n.3 (1st Cir. 2001); Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001); Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000); Calderon v. United States Dist. Ct., 134 F.3d 981, 986-88 (9th Cir. 1998).

claims, and he could subsequently return to federal court to pursue his habeas claims.  The Court held that this procedure would be appropriate where: (1) "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," id., (2) the "unexhausted claims are potentially meritorious," id. at 278, and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics," id.  In cases where these criteria are not satisfied, the Supreme Court held that "the [district] court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  Id.

Although the district court did not have the benefit of the Rhines decision before issuing its provisional order, it nonetheless engaged in a version of a "good cause" analysis.[17]  The court found that the omission of most of Clements' Appeals Court claims from his ALOFAR was the result of a strategic decision by Clements and his lawyer and could not constitute good cause.

---

[17] The court began its analysis by observing that, in its view, "staying the petition pending the pursuit of new relief in the state courts should be reserved only for exceptional cases where it would be inequitable or unjust to do otherwise, such as where it was impossible or impracticable for the petitioner to have pursued the unexhausted claims in the state proceedings that resolved the exhausted ones."  359 F. Supp. 2d at 12.  This language suggests that the district court may have used a more rigorous test than the Supreme Court's good cause standard.  However, as we indicate below, Clements fails to satisfy either standard, so the difference is irrelevant.

-25-

Clements has argued that all of his unexhausted claims should be stayed, pending his return to state court, because of his (and his counsel's) good faith reliance on the Massachusetts Rules of Appellate Procedure. He contends that he filed his ALOFAR while believing that the entire Appeals Court brief would be "presented to" the SJC, and thus would be included in the exhaustion analysis.

As to the four habeas claims omitted entirely from the ALOFAR, the intentional decision to omit some claims from the ALOFAR cannot amount to good cause. We have a long-standing rule that claims ommitted entirely from an ALOFAR cannot be exhausted. See Mele v. Fitchburg Dist. Court, 850 F.2d 817, 820-23 (1st Cir. 1988). Therefore, Clements could not have had good cause for failing to exhaust these claims, and his reliance on the MRAP is irrelevant. See Josselyn v. Dennehy, 475 F.3d 1, 5 (1st Cir. 2007) (affirming the district court's denial of a stay and abeyance, where petitioner asserted good cause for his failure to exhaust based on counsel's belief that arguments omitted from an ALOFAR might still be exhausted). The district court did not abuse its discretion in holding that Clements' decision to omit these claims from his ALOFAR does not amount to good cause.

Clements has not presented us with a specific argument about the cause for his failure to exhaust the joint venture claim (which was included in the ALOFAR, but only on state law grounds). As to this claim, he again relies on his more general argument

that, based on the MRAP, he and his counsel had a good faith belief that the Appeals Court brief would be "incorporated" into the ALOFAR and, thus, included within our exhaustion analysis. Inherent in this argument is the notion that the federal cases cited in the Appeals Court brief in support of the joint venture claim would suffice to satisfy the exhaustion requirement.

As we have explained above, see supra Part II.B, the 2001 version of the MRAP did not, as Clements suggests, result in presentation of the full Appeals Court brief to the SJC. His interpretation of the rules was unjustified. To the extent that Clements has also implicitly argued that he relied on the Barresi "backdrop" principle in deciding how to articulate the claims within the ALOFAR, we find that argument to be implausible. At the time Clements' ALOFAR was filed, in June 2001, our court had not yet decided Barresi. Therefore, Clements could not have relied on Barresi in his decision to present the joint venture claim only on state grounds.[18]   Moreover, at that time, Mele, 850 F.2d at 823,

_____

[18] We note that Scarpa v. DuBois, 38 F.3d 1, 7 n.3 (1st Cir. 1994), had some language suggesting the possibility of inclusion of lower court filings in the exhaustion analysis. Scarpa was, in a sense, a harbinger of Barresi. However, Scarpa did not profess to alter the "four corners" rule previously articulated in Mele v. Fitchburg Dist. Court, 850 F.2d 817 (1st Cir. 1988), and seemed to be limited to its facts. Moreover, the outcome in Scarpa did not rely on its implicit pre-Barresi logic; we held that the relevant state law claim presented in the ALOFAR was "functionally identical" to a federal claim, and therefore was exhausted, id. at 7, based on our decision in Nadworny v. Fair, 872 F.2d 1093, 1099-1100. In addition, Clements has never claimed that he relied on Scarpa when filing his ALOFAR. For all of these reasons, we do not

-27-

was the guiding precedent in our circuit and it clearly held that federal claims ought to be "raised within the four corners of the ALOFAR." Neither the state rules nor our decisions, then, could have justified Clements' decision to argue the joint venture claim exclusively on state law grounds. He has not shown good cause for his failure to exhaust this claim.

Clements' lack of good cause means that, under <u>Rhines</u>, he cannot take advantage of the "stay and abeyance" procedure. Therefore, we affirm the denial of a stay.

### IV.

In summary, we affirm the district court's decision finding five of Clements' claims unexhausted. We reverse the district court as to Clements' sufficiency claim. His Appeals Court brief, which was properly before the SJC under the 2001 version of MRAP 27.1, satisfied the exhaustion requirement by labeling that claim as federal. The petition is remanded to the district court, so that Clements may decide whether to dismiss his unexhausted claims. We also affirm the district court's denial of a stay of his unexhausted claims pending Clements' return to state court.

**<u>So ordered.</u>**

---

find that Clements' failure to exhaust can be explained by our decision in <u>Scarpa</u>.

-28-